Raphael
**ESTRADA–FIGUEROA, Plaintiff,**

v.

**Alan C. NELSON, et al., Defendants.**

**No. Civ. 85–0085–E.**

United States District Court,
S.D. California.

June 4, 1985.

Peter N. Larabee, San Diego, Cal., for plaintiff.

Robert Plaxico, Asst. U.S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

Plaintiff, a Mexican national, brings this action pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1982), the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1503 (1982), and the Declaratory Judgment Act, 28 U.S.C. § 2201–2202 (1982), seeking review of the determination by the Immigration and Naturalization Service (hereinafter "INS") denying him permission to reapply for admission to the United States.

Plaintiff has a long history of involvement with the INS. His first documented illegal entry into this country was in 1974. He was apprehended by the INS and permitted to voluntarily depart the country in April of 1976. During his residence in the United States, plaintiff married a permanent resident alien. There is one child from that marriage.

Plaintiff again entered the United States illegally in May of 1976 and was ap-

prehended by the INS authorities on August 2, 1976 after being arrested for forceable sexual abuse. At the time he was apprehended, plaintiff was apparently using a false Alien Registration Receipt Card, which he told authorities he had purchased in Los Angeles for $200. Although plaintiff was not prosecuted on the underlying criminal charge, a deportation hearing was held and plaintiff was deported on August 13, 1976. At the time of this involuntary deportation, plaintiff was warned that reentry without permission would constitute a felony.

Plaintiff entered the country illegally again in January of 1977 and was apprehended by INS authorities after being arrested by Salt Lake City police for a traffic violation and shoplifting. Plaintiff agreed to voluntarily depart the country rather than undergo a formal deportation hearing.

Plaintiff effected yet another illegal entry in September of 1977; this time he was not apprehended until May of 1979. At that time plaintiff indicated that he and his wife were on the Medi-Cal welfare plan. He was permitted to voluntarily depart on October 19, 1979.

At some point after this date, plaintiff returned to the United States illegally and he was not apprehended until December 1, 1982. At that time, plaintiff requested a deportation hearing. That hearing was held on December 23, 1982, during which plaintiff admitted that he had entered the United States without inspection. He was permitted to voluntarily depart by March 12, 1982.

On November 25, 1982, plaintiff's wife, in an effort to secure legal residence for plaintiff in the United States, filed a visa petition seeking to accord plaintiff immediate relative status under 8 U.S.C. § 1151(b)(1982). That petition was forwarded by the INS to the U.S. Embassy in Mexico and, according to plaintiff, plaintiff now has a visa granting him permission to enter this country. The government argues, however, that in addition to the visa, it was also necessary for plaintiff, in light of his previous involuntary deportation, to secure the consent of the Attorney General of the United States for application for admission into this country pursuant to the requirements of 8 U.S.C. § 1182(a)(17) (1982) and its implementing regulation, 8 C.F.R. § 212.2(a) (1984).

Plaintiff made the appropriate application for permission to apply for reentry, but it was denied by the INS in a decision dated December 5, 1983. In his ruling, James J. O'Keefe, the INS District Director, denied that application based upon plaintiff's history of repeated illegal entries and his action in obtaining a false Alien Registration Receipt Card. Plaintiff appealed this determination to the Associate Commissioner for Examinations in Washington, D.C. On June 6, 1984, the Associate Commissioner affirmed the decision of the District Director and dismissed plaintiff's appeal.

Plaintiff brought the present case to appeal that decision. At this juncture, defendant moves the court to dismiss plaintiff's complaint or, in the alternative, for summary judgment. Plaintiff has filed a cross-motion for summary judgment.

## DISCUSSION

Plaintiff challenges defendant's denial of plaintiff's application for permission to reapply for admission to the United States on two bases. First, he argues that the INS misinterprets the relevant section of the Immigration and Nationality Act; second, he contends that the agency abused its discretion in its application of the regulation to the facts of his case.

Looking first to the validity of the implementing regulation, the relevant section of the Immigration and Nationality Act, Section 212(a)(17), 8 U.S.C. § 1182(a)(17) (1982), requires that the following class of aliens shall be excluded:

[a]liens who have been arrested and deported ... and who seek admission within five years of the date of such deportation or removal, unless prior to the embarkation or reembarkation at a place

outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their reapplying for admission.

This statute has been implemented by a regulation issued by the INS which provides in pertinent part:

(a) Evidence ... Any alien who does not present proof of more than five successive years of absence from the United States which is satisfactory to the consular or immigration officer, or who has not remained outside the United States for this requisite period, must apply for permission to reapply under this part.

8 C.F.R. § 212.2(a) (1984).

It is plaintiff's contention that the regulation adds a requirement, not contemplated by the statute, that the applicant seeking permission to apply for readmission must have been *outside of the United States* for five successive years following involuntary deportation. Plaintiff argues that, to the contrary, all the statutory language requires is that plaintiff wait until five years after he has been deported, regardless of where he is residing in the interim. Because plaintiff was deported in August of 1976, he concludes that he does not need the Attorney General's permission to reapply for admission to the United States as more than five years have passed since the involuntary deportation.

This court finds that the government's position, that the applicant must have remained outside the United States for five successive years after the involuntary deportation in order to avoid the application requirement, is the correct one. The implementing regulation is valid as written.

Section 1182(a)(17) of Title 8 of the United States Code, the statutory basis for the regulation, was amended effective December 29, 1981 by Public Law 97–116, 95 Stat. 1611, to restrict the applicability of Section 1182(a)(17) to aliens who seek to reapply for admission within five years of deportation. Previously, the section had provided that *all* involuntarily deported aliens, not just those deported within the last five years, had to make application for permission to reapply.

The legislative history behind this amendment makes it clear that the purpose of the amendment was to streamline procedures, reduce paperwork, and enhance efficiency by eliminating the requirement that those deported more than five years earlier need make application. Since applications by those who had remained outside the United States more than five years were routinely granted, the need for them to seek permission was eliminated. The congressional report states:

Section 4(1) amends section 212(a)(17) to remove the requirement that an alien, who was previously deported or removed from the United States, must obtain the Attorney General's consent before entering the United States more than five years after the date of the deportation or removal.... The Department of Justice has indicated that generally aliens who are otherwise admissible *and have remained outside the United States for a substantial period of time without returning illegally* are routinely granted permission to reenter. There is little useful purpose served by retaining the current provision and there would be a direct economy by eliminating the need to adjudicate consent application for aliens *who have remained outside the United States for five years or longer.*

H.R.Rep. No. 264, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.Code & Cong.Admin.News 2577, 2589 (emphasis added).

As the italicized language illustrates, the rationale for changing the requirement from a blanket one covering all involuntarily deported aliens to a requirement that only those deported within the last five years need apply was that those aliens deported more than five years ago, *who had not reentered illegally* were routinely granted permission to reapply. In an attempt to streamline administrative procedures, Congress eliminated the requirement that had existed as to those who fell within the category for which permission to reapply was routinely granted. There is no

suggestion in the legislative history that Congress was attempting to liberalize the application policy.

 Thus, this court concludes that the INS regulation is valid. A regulation, to be valid, must be consistent with the statute under which it is promulgated. *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). In interpreting the will of Congress in passing a particular statute, the legislative history is a persuasive source of congressional intent. *Id.* at 873–78, 97 S.Ct. at 2756–59. In this case, the regulation is consistent with the statute and the intent of Congress as expressed through the legislative history.[1]

 Given the conclusion that the INS' regulation is valid, plaintiff must have remained outside the United States for five years subsequent to his deportation in order to avoid the requirement that he seek permission for the Attorney General to reapply for admission. This he has not done. As a result, he must seek the discretionary approval of the Attorney General. Because this approval was denied, the only remaining question for this court is whether that denial was an abuse of discretion.

 It is well-established that the standard of review which this court must apply to the administrative determination denying plaintiff's application for leave to reapply for admission to the United States is whether that ruling is an abuse of the agency's discretion. *See, e.g., Dragon v.*

*I.N.S.,* 748 F.2d 1304, 1305, 1306 (9th Cir. 1984); *Murillo-Aguilera v. Rosenberg,* 351 F.2d 289, 290 (9th Cir.1965). Upon reviewing that ruling, this court concludes that the agency's decision was not an abuse of discretion. The INS considered and weighed all the relevant facts, including the fact that plaintiff's wife and child resided in the United States, and found that this positive fact was outweighed by the negative facts of plaintiff's repeated disregard for the immigration laws. There is no basis for concluding that this balancing was abusive.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing, and for the reasons set forth herein, the court grants the defendant's motion for summary judgment. Plaintiff's cross-motion for summary judgment is, accordingly, denied.[2]

---

1. In finding consistency between the statutory language and the regulation, the court notes that the statute requires that the previously deported person reapply for admission "prior to the embarkation or reembarkation at a place outside the United States or ... from foreign contiguous territory." This plainly envisions that the alien has not previously returned to this country illegally. It is also noteworthy that the case law, although not discussing the specific argument raised by plaintiff herein, has tacitly assumed that the statute means that the alien must not reenter the United States without permission during the five year period. *See, e.g., Munoz-Santana v. United States I.N.S.,* 742 F.2d 561, 562 (9th Cir.1984); *Luna v. I.N.S.,* 709 F.2d 126, 127 (1st Cir.1983).

2. Plaintiff has argued that there are factual issues which remain in the case, for example, whether plaintiff was actually receiving Medi-Cal benefits at the time of his May 1979 apprehension and whether plaintiff was actually in possession of a false Alien Registration Receipt Card at the time of his August 1976 involuntary deportation. The government has submitted evidence to demonstrate that these facts were true, however, and plaintiff has not come forward with any evidence to create an issue of fact as required under Federal Rule of Civil Procedure 56(e). Thus, even if these facts were material to the resolution of the present motion, which they are not, plaintiff has not made a showing sufficient to prevent the grant of summary judgment against him.