Ilocia **ANTOINE–DORCELLI**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 82–1344.

United States Court of Appeals, First Circuit.

Submitted Dec. 10, 1982.
Decided March 28, 1983.

Scott Kalisch, San Juan, P.R., on brief, for petitioner.

Lauri Steven Filppu and Daniel E. Fromstein, Attys., Crim. Div., Dept. of Justice, Washington, D.C., on brief, for respondent.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Petitioner appeals from a decision of the Board of Immigration Appeals (Board) affirming an immigration judge's denial of her application for suspension of deportation to Haiti. The Board concluded that petitioner will not suffer extreme hardship if she is deported. We think the Board exercised its discretion arbitrarily and irrationally in this case and, therefore, we reverse its decision not to suspend deportation and remand the case to the Board for further proceedings consistent with this opinion.

Petitioner is a single, forty-nine year old native and citizen of Haiti. She has been in Puerto Rico since August 4, 1970, when she was admitted as a nonimmigrant visitor for pleasure and authorized to remain in the United States until August 30, 1970. On November 23, 1970, her nonimmigrant status was adjusted to an F–1 student status, allowing her to remain in the United States until July 29, 1971. On July 2, 1971, her request for an extension as an F–1 student was denied and she was granted the privilege of departing from the United States, without the issuance of an order to show cause, on or before August 29, 1971. She failed to depart within the specified time.

On April 12, 1978, an order to show cause was served on petitioner charging that she was subject to deportation under section 241(a)(2) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1251(a)(2) (1976), for having remained in this country longer than she was authorized to. At a hearing before an immigration judge, petitioner admitted deportability under section 241(a)(2), but requested a suspension of deportation on the ground that deportation would cause her extreme hardship.[1] The basis for her claim of hardship was her close and long-standing relationship with the family with whom she is currently residing in Puerto Rico. Petitioner has lived with members of the family of Edward Craig for thirty years. From approximately 1950 to 1970, she lived as a servant with Mrs. Craig's mother in Haiti and was responsible for caring for Mrs. Craig as a child. In 1970, when Mrs. Craig's mother died, petitioner came to live with the Craig family. Petitioner and Mr. and Mrs. Craig testified that

---

1. In relevant part, section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1) (1976), authorizes the Attorney General to suspend deportation in the case of an alien who

> has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a

> person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

There is no dispute as to petitioner's seven years residency in this country or as to her good moral character.

she is treated as and considered a member of the family. Although she apparently has some money of her own, the Craigs give her whatever she needs. She has become particularly attached to Mrs. Craig's children. Petitioner's natural mother and a brother and sister still reside in Haiti, but she has had no contact with them since she was a young child.

The immigration judge reviewed the testimony before him and concluded that the emotional and financial hardship to petitioner if she were forced to return to Haiti was not the extreme hardship contemplated by the Act. He, therefore, denied her application for suspension of deportation, but granted her the privilege of voluntary departure.

In affirming the immigration judge, the Board majority noted that since petitioner is not actually related to the Craig family only her own hardship could be considered in determining whether a suspension of deportation was warranted. Although it acknowledged that family ties in the United States should be considered in assessing extreme hardship to an alien, the majority merely noted that petitioner had no such ties. The Board does not appear to have analyzed the hardship of petitioner's separation from the Craigs. The majority did suggest that some of petitioner's hardship might be ameliorated by reunion with her natural mother and siblings in Haiti.

■ The determination of "extreme hardship" is committed to the sound discretion of the Attorney General. *Immigration and Naturalization Service v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). Although the Board may construe extreme hardship narrowly, *see id.* at 145, 101 S.Ct. at 1031, it must properly consider the core of the petitioner's claim—that, along with economic hardships, deportation will separate petitioner from her only true family. The Board's failure to consider this constituted an abuse of its discretion. *See Santana-Figueroa v. Immigration and Naturalization*

*Service,* 644 F.2d 1354, 1356–57 (9th Cir. 1981).

Courts of appeals have stated that the Board, in reviewing requests for suspension of deportation under section 244(a)(1) of the Act, should recognize the importance of the separation of family members from each other and devote careful scrutiny to this question. *See, e.g., Mejia-Carrillo v. Immigration and Naturalization Service,* 656 F.2d 520, 521–22 (9th Cir.1981); *Bastidas v. Immigration and Naturalization Service,* 609 F.2d 101, 104–05 (3rd Cir.1979). The Ninth Circuit has gone so far as to state that "[t]he most important single factor may be the separation of the alien from family living in the United States" and that "separation from family alone may establish extreme hardship." *Mejia-Carrillo,* 656 F.2d at 522.

We disagree with the Board's apparent conclusion that these principles do not apply in the instant case because the petitioner is not related to the Craig family. It is unrealistic as well as unjust to adopt such a rigid view of the family unit when construing and administering the statutory provision regarding extreme hardship to an alien. The facts noted by the two dissenting members of the Board—that she left her own mother's home at age five and began to live with Mrs. Craig's mother at age seven, that she has had little or no contact with her natural mother and two siblings living in Haiti since she was a young child, and that she has been treated as and considered herself to be a member of the Craig family for the past thirty years—clearly show that petitioner's true and only family relationship is with the Craigs.

The Third Circuit has applied a "substance over form" analysis of family relationships in construing that portion of section 244(a)(1) authorizing the Attorney General to consider extreme hardship to the alien's "spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence."[2] In *Tovar v. Immigration and Naturalization Service,* 612 F.2d 794 (3d

---

**2.** In considering the hardship to petitioner of separation from the Craig family it is clearly

irrelevant that the Craigs may or may not be

Cir.1980), the court held that an alien's relationship to her grandchild "so closely resembled that of parent to child" that hardship to the grandchild from the alien's deportation should have been considered. *Id.* at 797. It noted the grandchild's emotional attachment and financial dependence on its grandmother and concluded that "the two comprise a family and in fact share the relationship of mother to child." *Id.* at 797–98. It is all the more appropriate to apply such a substance over form analysis to the question of the hardship to an alien resulting from separation from the only family she has known, albeit not of the same blood, because of the breadth of the statutory language relevant to this issue and the fact sensitive inquiry it requires.[3] To distinguish *Tovar* from the case before us on the basis that the alien and grandchild in *Tovar* were related is to ignore the logic of that case's analysis.[4] To fail to consider petitioner's separation from the Craigs as a separation from her own family is to ignore reality and distort the meaning of extreme hardship.

Because of this distortion, the Board undertook a less than full evaluation of petitioner's hardship. This case, like *Santana-*

*Figueroa,* 644 F.2d at 1357, differs from the Supreme Court's decision in *Jong Ha Wang,* 450 U.S. at 144, 101 S.Ct. at 1031, in that here the Board did not really consider all of the facts alleged.[5] The first indication that the Board exercised its discretion irrationally is its fatuous suggestion that petitioner's emotional hardship might be ameliorated by reunion with her natural mother and siblings in Haiti. The second is the almost summary manner in which the Board disposed of the issue of hardship resulting from separation from the Craig family. The Board's treatment is particularly disturbing in light of *Santana-Figueroa.* In that case the court admonished the Board for disregarding the possibility of hardship resulting from an alien's separation from a community in which he had regularly attended church for over ten years and had close friends. 644 F.2d at 1357. The emotional hardship element of the case before us is much more compelling.

*Reversed and Remanded.*

---

within the class of family members specified in the statute. *See Barrera-Leyva v. Immigration and Naturalization Service,* 637 F.2d 640, 644 (9th Cir.1980).

3. *Tovar* suggests that the Board should have considered whether the petitioner's relationship with the Craig children closely resembles that of a parent to child. If such a relationship had been found to exist—there appears to be no real evidence on this point in the record one way or the other—then consideration of the harm suffered by these children as a result of petitioner's deportation might also have been merited.

4. The *Tovar* court cited *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), for additional support. One might be tempted also to cite that Supreme Court case for the proposition that relatedness in the traditional sense is a valid distinguishing feature. In *Moore* the Court distinguished its earlier ruling in *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), on the basis that the ordinance in the latter case "affected only *unrelated* individuals" whereas the ordinance in *Moore* outlawed "a grandmother's choice to live with her grandson." *Moore,* 431 U.S. at

498–99, 97 S.Ct. at 1935–36 (emphasis in original). We think there is a difference, however, between analyzing the constitutionality of zoning ordinances and considering extreme hardship in deportation cases. A zoning ordinance is a rule of general applicability and is constitutional if it bears a "rational relationship to permissible state objectives." *Id.* at 498, 97 S.Ct. at 1935. A determination of extreme hardship, on the other hand, is more adjudicative as it depends on the facts and circumstances of each particular case. In the latter type of inquiry a rigid distinction centered on the notion of relatedness is unrealistic.

5. This case, like *Santana-Figueroa,* also involves both economic and noneconomic sources of hardship much more severe than those alleged in *Jong Ha Wang.* Although our discussion primarily addresses petitioner's noneconomic hardship, we note that her economic hardship resulting from deportation would also be significant. In its decision the Board stated that the Craig family currently takes care of all petitioner's financial needs as they arise; she does not receive a salary from the Craigs and is not considered their employee.