**Emilio LUNA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 82–1311, 82–1863.

United States Court of Appeals, First Circuit.

Argued April 7, 1983.

Decided June 16, 1983.

Rehearing Denied Aug. 26, 1983.

Harvey Kaplan, Boston, Mass., with whom Eliza Klein, and Law Offices of Harvey Kaplan, Boston, Mass., were on brief, for petitioner.

Thomas W. Hussey, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Civ. Div., Charles E. Hamilton, III, Attorney, Margaret J. Perry, Attorney, Lauri Steven Filppu, Attorney, General Lit-

igation and Legal Advice Section, Crim. Div., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before HAYNSWORTH,* Senior Circuit Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

We here review a decision of the Immigration and Naturalization Service (INS) Board of Immigration Appeals not to reopen a deportation proceeding—a proceeding that in this case led to an order for the involuntary deportation of petitioner Emilio Luna. Because we conclude that the INS did not take proper account of various legally relevant factors, and in light of a special supervening circumstance (namely, the birth of a new child), we believe a reopening is required.

Luna entered the United States from the Dominican Republic in 1971 as an alien in transit without a visa. See 8 U.S.C. § 1101(a)(15)(C). He overstayed his brief welcome; when he turned himself in to the INS, it ordered him deported. Although he agreed to leave "voluntarily", see id. at § 1254(e), he did not leave. Subsequently his wife and family arrived, became lawful, permanent United States residents, and petitioned for a visa for Luna. See id. at § 1153(a)(2). The prior deportation order, however, prevents Luna from regularizing his status, for under the law, once an involuntary deportee leaves the United States (which Luna must do to obtain his visa), he cannot return for five years. See id. at § 1182(a)(17). Consequently, Luna asked the INS to reopen his proceedings: (1) to allow him to leave voluntarily, Case No. 82–1311, and (2) to suspend his deportation, Case No. 82–1863. The INS, in separate orders, denied each request.

Technically, we have before us two appeals—one from each separate denial—but, in light of our decision, we need reverse only the INS's refusal to reopen to consider suspending deportation. If Luna, on remand, succeeds in convincing the INS to

suspend his deportation, he has achieved his objective. In fact, he can then leave voluntarily and pick up his visa in Canada. If Luna fails to convince the INS to "suspend," however, it is most unlikely he could convince it to allow "voluntary departure," for as far as is relevant here the legal standards for "voluntary departure" are less favorable to Luna than those for "suspension of deportation." Compare 8 U.S.C. § 1254(e) (voluntary departure) with id. at § 1254(a)(1) (suspension of deportation). See Lau, Wun Man v. INS, 426 F.2d 689, 690 (3d Cir.1970) (per curiam); In re Onyedibia, 15 I. & N. Dec. 37, 38 (B.I.A.1974).

■ To obtain a reopening of his proceedings to allow him to apply for suspension of deportation, Luna must at least establish "prima facie," see INS v. Jong Ha Wang, 450 U.S. 139, 141, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981) (per curiam ), that he falls within the terms of 8 U.S.C. § 1254(a)(1), which allows suspension when:

deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse ... or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. . . .

■ The agency itself has considerable discretion to decide what constitutes "extreme hardship," see INS v. Jong Ha Wang, 450 U.S. at 144–45, 101 S.Ct. at 1031–1032; Antoine-Dorcelli v. INS, 703 F.2d 19, 21 (1st Cir.1983), and to decide whether or not to reopen, see INS v. Jong Ha Wang, 450 U.S. at 143 n. 5, 101 S.Ct. at 1030 n. 5; Chae Kim Ro v. INS, 670 F.2d 114, 116 (9th Cir.1982). Nonetheless, we believe that Luna has made out enough of a case of extreme hardship to require a reopening of the proceedings and full agency consideration of his application for suspension of deportation.

■ We do not see how the Board could reasonably determine that Luna had not even made a "prima facie" case of extreme hardship to his lawfully resident family.

* Of the Fourth Circuit, sitting by designation.

The Board based its conclusion upon a combination of three factors: (1) the children would suffer "no greater hardship" from separation than "they experienced" previously when Luna was in the United States and they were in the Dominican Republic; (2) the children had "only lived in the United States a short period and should have no trouble readjusting to life in their native country;" and (3) "there has been no showing" that Luna's wife "could not receive adequate medical care" for her medical problems in the Dominican Republic. These three reasons, in combination, might constitute sufficient grounds for a denial of suspension after a hearing. But, without a hearing, how can the Board know what "hardship" the children previously experienced? *See Mejia-Carrillo v. INS,* 656 F.2d 520, 522 (9th Cir.1981) ("separation from family alone may establish extreme hardship"), *quoted with approval in Antoine-Dorcelli v. INS,* 703 F.2d at 21. How does the Board know what attachments the children have formed after living in the United States for four years from ages 12 to 16, 10 to 14, 8 to 12, and 7 to 11? And, without a hearing, how can it dismiss so easily the fairly serious claims about Luna's wife's illness? Moreover, what of a factor the Board does not mention—the nonmedical hardship to *Mrs.* Luna. She, a lawful resident, apparently must choose between staying with one or both of her parents in the United States and leaving with her husband. Aside from, and in addition to, the physical hardship of moving, is not the status of the Luna family as "permanent residents" (which the statute equates with that of "citizens") entitled to *some* weight in the balance? After all, the Supreme Court has spoken of citizenship as a "most precious right." *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 159, 83 S.Ct. 554, 562, 9 L.Ed.2d 644 (1963). And, the fact that the American citizenship of a newborn child does not *automatically* allow its father to stay in America, *INS v. Jong Ha Wang, supra; Vaughn v. INS,* 643 F.2d 35, 38 (1st Cir. 1981); *Mamanee v. INS,* 566 F.2d 1103, 1106 (9th Cir.1977); *Davidson v. INS,* 558 F.2d 1361, 1362–63 (9th Cir.1977), does not mean that the special privileges and attachments surrounding a lawful right to stay in this country count for nothing. Finally, what of Luna's claim of economic hardship to his family? The Board simply says that "economic hardship *alone* is not sufficient to warrant reopening," but economic hardship "is still a fact to consider." *Mejia-Carrillo v. INS,* 656 F.2d at 522; *see Santana-Figueroa v. INS,* 644 F.2d 1354, 1357–58 (9th Cir.1981).

Like the Ninth Circuit (in a different but related context), we believe it "most difficult to discern" the extent of the hardship "without a hearing." *Urbano de Malaluan v. INS,* 577 F.2d 589, 594 (9th Cir.1978). *See also Villena v. INS,* 622 F.2d 1352, 1359 (9th Cir.1980) ("Because the nature and extent of hardship to a citizen child is difficult to discern without a hearing, circumstances that suggest that the alien's deportation would cause extreme hardship to his child warrant a hearing."); *Antoine-Dorcelli v. INS,* 703 F.2d at 21, (the INS "must properly consider the core" of an alien's hardship claim).

Two additional features of this case, together with the considerations just mentioned, convince us that reopening to allow a hearing is appropriate. First, the Board seems to have put considerable weight upon what it called Luna's deceptive behavior—false statements he allegedly made in his efforts to remain here. And, in its brief, the INS explains that these include what it considers to have been a fraudulent marriage to an American citizen. Luna, however, denies most of the INS' allegations and the implications the government seeks to draw from them. These factual disputes should not be resolved against Luna unless he has had a fair opportunity to develop his side of the story. *Reyes v. INS,* 673 F.2d 1087, 1090 (9th Cir.1982) ("Since motions to reopen are decided without benefit of a hearing, common notions of fair play and substantial justice generally require that the Board accept as true the facts stated in an alien's affidavits in ruling on his or her motion."). Such an opportunity is important here where Luna argues that many

factors together overcome the negative features of his case. He claims that his wife is seriously ill, *see Reyes v. INS,* 673 F.2d at 1089 (consideration of medical problems); that he has never been arrested; that his employer will testify that he "has always been an honest and sincere worker"; that he regularly sends financial support to his elderly and ailing parents in the Dominican Republic; that he and his wife take an active part in such church-related community activities as visiting the sick and aged in hospitals, *see Santana-Figueroa v. INS,* 644 F.2d at 1357 (testimony that petitioner was "an asset to our church and community"); and that his children are emotionally very dependent on him because of their mother's illness, *see Bastidas v. INS,* 609 F.2d 101, 104–05 (3d Cir.1979) (dependence of child on father). Under these circumstances, the factual controversy surrounding important negative claims is itself an additional reason for reopening.

Second, since this appeal was filed Luna has become the father of a newborn child— an American citizen. While this fact alone cannot determine the outcome of his "suspension" case, it is an additional, important reason why reopening and full agency consideration of this factor is appropriate. *See Chae Kim Ro v. INS,* 670 F.2d at 116; *Villena v. INS,* 622 F.2d at 1359 & n. 9; *Urbano de Malaluan v. INS,* 577 F.2d at 594.

*For these reasons, the order of the Board of Immigration Appeals in No. 82–1311 is affirmed. The order of the Board of Immigration Appeals in No. 82–1863 is vacated and the case is remanded with directions to grant the motion to reopen to apply for suspension of deportation and for a full evidentiary hearing on the merits consistent with the opinion filed this date.*