# IMMIGRATION AND NATURALIZATION SERVICE *v.* HECTOR

No. 86–21.   Decided November 17, 1986

PER CURIAM.

Virginia Hector, a native and citizen of Dominica, West Indies, entered the United States in April 1975 as a nonimmigrant visitor for pleasure. She has remained in this country illegally since April 30, 1975, when her authorization to stay expired. The youngest of her four children, a 10-year-old boy, resides with her here; the other three children live with their grandparents in Dominica. In 1983, two of Hector's nieces, United States citizens aged 10 and 11, came to live with her in order to attend school in what their parents perceived to be a superior educational system. The nieces' parents continue to reside in Dominica.

The Immigration and Naturalization Service (INS) instituted deportation proceedings against Hector in July 1983. She conceded deportability, but applied for suspension of deportation pursuant to § 244(a)(1) of the Immigration and Nationality Act (Act), 66 Stat. 214, as amended, 8 U. S. C. § 1254(a)(1). That section authorizes the Attorney General, in his discretion, to suspend deportation of an illegal alien, and to adjust the alien's status to that of an alien lawfully admitted for permanent residence, if the deportable alien

"has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of . . . application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

An Immigration Judge and the Board of Immigration Appeals (Board) found that Hector satisfied the first two statutory elements—continuous physical residence and good moral character—but that she could not demonstrate extreme hard-

ship to herself, or to her "spouse, parent, or child." With respect to her nieces, the Board determined that, as a factual matter, Hector's separation from them would not constitute extreme hardship to herself;[1] as a legal matter, the Board concluded that a niece is not a "child" within the meaning of § 244(a)(1).

The Court of Appeals for the Third Circuit granted Hector's petition for review and remanded the case to the Board. 782 F. 2d 1028 (1986). The court held that the Board had erred in not giving sufficient consideration to whether Hector's relationship with her nieces was the functional equivalent of a parent-child relationship. The court thus instructed the Board to ascertain whether there was a parental-type relationship, and, if so, to determine whether Hector's nieces would experience extreme hardship as a result of her deportation.[2]

In so holding, the court relied on its earlier decision in *Tovar* v. *INS*, 612 F. 2d 794 (1980), which held that the term "child" as used in § 244(a)(1) includes individuals who do not fit within the statutory definition of "child" set out in § 101(b)(1), 8 U. S. C. § 1101(b)(1), if their relationship with

---

[1] The Board found that "[t]he emotional hardship to the respondent due to difficulties encountered by her nieces as a result of her deportation also does not constitute extreme hardship even when combined with the other factors in her case." App. to Pet. for Cert. 12a. Cf. *Contreras-Buenfil* v. *INS*, 712 F. 2d 401, 403 (CA9 1983); *Antoine-Dorcelli* v. *INS*, 703 F. 2d 19, 22 (CA1 1983).

[2] Both the Immigration Judge and the Board had also held, in the alternative, that Hector's relationship with her nieces was not akin to a mother and daughter relationship, and that, in any event, the nieces would not experience extreme hardship as a result of Hector's deportation. The Court of Appeals held, however, that the Board had foreclosed presentation of evidence on these issues, and had not meaningfully addressed each relevant factor. App. to Pet. for Cert. 4a. Judge Garth dissented, concluding that the Board has adequately considered Hector's relationship with her nieces and the hardship issue. *Id.*, at 5a, n. 1.

the deportable alien closely resembles that of a parent and child.[3]

Because we find the plain language of the statute so compelling, we reverse, and hold that the Board is not required under § 244(a)(1) to consider the hardship to a third party other than a spouse, parent, or child, as defined by the Act. Congress has specifically identified the relatives whose hardship is to be considered, and then set forth unusually detailed and unyielding provisions defining each class of included relatives.[4] The statutory definition of the term "child" is particularly exhaustive.[5] Hector has never claimed, and the

---

[3] The Courts of Appeals have reached varying conclusions on whether hardship to an alien's relative or loved one who does not qualify under the statute's technical definitions as a spouse, parent, or child must be independently considered in assessing extreme hardship under § 244(a)(1). As indicated, the Third Circuit has held that the Board must look at the hardship that some third parties would experience, even if they do not qualify under the definitional section of the Act. See *Tovar* v. *INS,* 612 F. 2d 794, 797–798 (1980). A number of other Circuits have rejected this flexible approach. See, *e. g., Zamora-Garcia* v. *United States Dept. of Justice INS,* 737 F. 2d 488 (CA5 1984); *Contreras-Buenfil, supra,* at 403.

[4] The term "parent" is defined in 8 U. S. C. § 1101(b)(2); the term "spouse" is defined in § 1101(a)(35).

[5] The definitional section provides:

"(b) As used in in subchapters I and II of this chapter—

"(1) The term "child" means an unmarried person under twenty-one years of age who is —

"(A) a legitimate child;

"(B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred;

"(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation;

"(D) an illegitimate child by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother;

Court of Appeals did not hold, that the two nieces qualify under that statutory definition.

As we have explained with reference to the technical definition of "child" contained within this statute:

> "With respect to each of these legislative policy distinctions, it could be argued that the line should have been drawn at a different point and that the statutory definitions deny preferential status to [some] who share strong family ties. . . . But it is clear from our cases . . . that these are policy questions entrusted exclusively to the political branches of our Government, and we have no judicial authority to substitute our political judgment for that of the Congress." *Fiallo* v. *Bell*, 430 U. S. 787, 798 (1977).

---

"(E) a child adopted while under the age of sixteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided,* That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter; or

"(F) a child, under the age of sixteen at the time a petition is filed in his behalf to accord a classification as an immediate relative under section 1151(b) of this title, who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; who has been adopted abroad by a United States citizen and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who personally saw and observed the child prior to or during the adoption proceedings; or who is coming to the United States for adoption by a United States citizen and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who have or has complied with the preadoption requirements, if any, of the child's proposed residence: *Provided,* That the Attorney General is satisfied that proper care will be furnished the child if admitted to the United States: *Provided further,* That no natural parent or prior adoptive parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter." § 1101(b)(1).

The suspension of deportation provision, § 1254(a), is part of subchapter II; this definition of "child" therefore applies.

Thus, even if Hector's relationship with her nieces closely resembles a parent-child relationship, we are constrained to hold that Congress, through the plain language of the statute,[6] precluded this functional approach to defining the term "child." Cf. *INS* v. *Phinpathya*, 464 U. S. 183, 194 (1984) (refusing to ignore "the clear congressional mandate and the plain meaning of the statute" where it was clear that "Congress considered the harsh consequences of its actions"). Congress has shown its willingness to redefine the term "child" on a number of occasions,[7] but it has not included

---

[6] The limiting nature of the plain language is corroborated by the legislative history of both the suspension of deportation provision and the definitional section of the Act.

With respect to suspension of deportation, the Senate rejected a draft of the bill that focused on the hardship to the "immediate family." See S. 716, 82d Cong., 1st Sess. (1951). In a prepared analysis of S. 716, the INS expressed concern about this undefined term that the INS considered "obscure, uncertain, and difficult, if not impossible, to administer" since the language could "conceivably be claimed to include *any* relative of the alien, by blood or marriage, who might be living with him in his household." 4 INS, Analysis of S. 716, 82d Cong., 1st Sess., 244–2 and 244–3 (1951) (emphasis in original). Instead, the INS asked Congress to list the "particular relatives who are intended to be described." *Id.*, at 244–3. The bill that was eventually passed contained the "parent, spouse, or child" language that is now in effect.

The history of the definitional section similarly demonstrates that Congress has been actively engaged in delineating just how broad it wishes the definition of "child" to be. As originally enacted, the statute defined a "child" as an unmarried legitimate or legitimated child or stepchild under 21 years of age. See *Fiallo* v. *Bell*, 430 U. S., at 797. Congress has since repeatedly fine-tuned the definition of "child." There have been no less than four separate amendments, each adding to or refining the definition. See Act of Sept. 11, 1957, Pub L. 85–316, § 2, 71 Stat. 639; Act of Sept. 26, 1961, Pub. L. 87–301, §§ 1–4, 75 Stat. 650–651; Act of Oct. 3, 1965, Pub. L. 89–236, § 8(c), 79 Stat. 917; Act of Dec. 29, 1981, Pub. L. 97–116, 95 Stat. 1611. In light of this history of close congressional attention to this specific issue, we are especially bound to pay heed to the plain mandate of the words Congress has chosen.

[7] See n. 6, *supra.* Similarly, Congress has shown that it is willing to correct inequities that might result in our applying the plain language of

nieces in that definition or authorized us to adopt a functional definition.[8]

Accordingly, the petition for certiorari is granted, and the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BRENNAN would grant the petition and set the case for oral argument.

JUSTICE MARSHALL dissents from this summary disposition, which has been ordered without affording the parties prior notice or an opportunity to file briefs on the merits. See, *e. g.*, *Acosta* v. *Louisiana Dept. of Health and Human Resources*, 478 U. S. 251 (1986) (MARSHALL, J., dissenting).

---

the suspension of deportation provision. In the recently enacted Immigration Reform and Control Act of 1986, Pub. L. 99–603, 100 Stat. 3359, Congress explicitly amended the Act to "overrule *INS* v. *Phinpathya*, [464 U. S. 183] (1984), which held that any absence, however brief, breaks the continuity of physical presence." H. R. Rep. No. 99–682, pt. 1, p. 124 (1986).

[8] Our decision, of course, does not affect the possibility that Hector may be entitled to relief under the amnesty provisions of the newly enacted Immigration Reform and Control Act of 1986, *supra.*