Filemon Garza **GUTIERREZ,** Ernesto Anzaldua Garcia, Nerea Anzaldua de Gomez, Arturo Garza Uribe, Beatriz Anzaldua de Garza, Maria Luisa Cavazos Garza, Delta Products Company, S.A., Nocando Mem Holdings, Limited, and Javier Vazquez Castro, Individually and on Behalf of a Class of all Others Similarly Situated, Plaintiffs,

v.

**DELOITTE & TOUCHE, L.L.P.,** Deloitte Touche Tohmatsu International, the Cayman Islands Firm of Deloitte & Touche, John Harrell, Peter Talkington, Kathleen W. Farlow, Scobb Bub, Alan Stinson, David Lloyd, Eric Rothe, Edward R. Crater, Michael Pilling, Ian Wright, R.E. Douglas, G.W. Wigney, and Adrian Hammond, Defendants.

**No. CIV.A.SA00CA708FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 19, 2001.

Gerald Thomas Drought, Martin, Drought & Torres, San Antonio, TX, M. David Bryant, Hughes & Luce, L.L.P., Dallas, TX, Alberto B. Pullen, Law Offices of Alberto B. Pullen, Brownsville, TX, Allan Brent Diamond, Diamond McCarthy Taylor & Finley, L.L.P., Houston, TX, Arley D. Finley, III, Michael S. Truesdale, William T. Reid, IV, Diamond McCarthy Taylor & Finley, L.L.P., Austin, TX, Edward C. Snyder, Martin, Drought & Torres, Inc., San Antonio, TX, for Filemon Garza Gutierrez, Ernesto Anzaldua Garcia, Nerea Anzaldua de Gomez, Arturo Garza

Uribe, Beatriz Anzaldua de Garza, Maria Luisa Cavazos Garza, Delta Products Co., S.A., Nocando Mem Holdings, Limited, Javier Vazquez Castro.

Ricardo G. Cedillo, Davis, Cedillo & Mendoza, San Antonio, TX, Leslie J. Strieber, III, Davis, Cedillo & Mendoza, Inc., San Antonio, TX, Mark R. Robeck, Baker & Botts, Robb L. Voyles, Baker & Botts, Austin, TX, for Deloitte & Touche, L.L.P., John Harrell, Peter Talkington, Kathleen W. Farlow, Scott Bub, Alan Stinson, David Lloyd, Eric Rothe, Edward R. Crater.

Mark R. Robeck, Baker & Botts, Robb L. Voyles, Baker & Botts, Austin, TX, for Deloitte Touche Tohmatsu International, the Cayman Islands Firm of Deloitte Touche, Michael Pilling, Ian Wright, R.E. Douglas, G.W. Wigney, Adrian Hammond.

Alejandra I. Villarreal, Wickliff and Hall, San Antonio, TX, Louis A. Craco, Elizabeth S. Strong, Tariq Mundiya, Willkie, Farr & Gallagher, New York, NY, Richard I. Miller, American Institute of Accountants, New York, NY, Stuart J. Kaswell, Securities Industry Ass'n, New York, NY, for American Institute of Certified Public Accounts, The Securities Industry Ass'n.

## ORDER OF REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

BIERY, District Judge.

Before the Court are Plaintiffs' Motion to Remand (docket no. 6), defendants' response (docket no. 15), plaintiffs' reply (docket no. 17), defendants' surreply (docket no. 19), and the Brief of Amici Curiae (docket no. 22) filed by the American Institute of Certified Public Accountants and Securities Industry Association. After careful consideration of the motion, the response and replies, along with the amici brief, the pleadings on file and the entire record, the Court is of the opinion this matter should be remanded to state court for lack of subject matter jurisdiction.[1]

## BACKGROUND

Plaintiffs made investments in a variety of securities through the "InverWorld entities," which consist of domestic and foreign corporations and trusts, including an investment advisor and brokerage firm. The InverWorld entities and high level officers, Jose Zollino and George Fahey, are involved in previously filed litigation brought by the Securities and Exchange Commission on behalf of investors, *see Securities & Exch. Comm'n v. InverWorld, Inc.*, Civil Action No. SA–99–CA–822–FB, and bankruptcy and receivership proceedings are ongoing in San Antonio, Texas, and the Grand Court of the Cayman Islands. Plaintiffs filed suit against Deloitte & Touche L.L.P., an accounting firm which, and several individual accountants who, performed audits of the InverWorld entities over a period of years. They allege the accounting malpractice between 1993 and 1997 under five causes of action pursuant to Texas law: common law fraud, statutory fraud under section 27.01 of the Texas Business and Commerce Code, negligent misrepresentation, aiding and abetting and participation in conversion, and aiding and abetting violations of the Texas Securities Act. Defendants removed the case to federal court basing federal subject matter jurisdiction upon the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f)(2),

---

1. The Court is aware of defendants' letter request for oral argument. Given the 700 to 800 felony defendants on this Court's criminal docket, and considering the extensive briefing done in this case, the Court does not believe oral argument is necessary for disposition of plaintiffs' motion to remand.

which governs nationally traded securities fraud actions. Plaintiffs move to remand contending the SLUSA is not applicable.

Plaintiffs specifically allege and use the term "accounting misfeasance." Based on historical and substantive considerations, an argument can be made the SLUSA was not intended to cover an accounting misfeasance case. Historically, federal securities regulation occurred only when Congress perceived an abuse in the securities markets by exchange brokers or attorneys' representing investors. *See* B. Scott Daugherty, *Uncharted Waters: Securities Class Actions in Texas After the Securities Litigation Uniform Standards Act of 1998,* 31 St. Mary's L.J. 143, 152 (1999). Substantively, the SLUSA imposes registration and disclosure requirements on issuers which offer securities for sale to the public and prohibits fraud, manipulation and deception in connection with the sale of securities. *See* 15 U.S.C. §§ 77p, 78bb(f)(2). An essential element of a SLUSA cause of action, then, is proof that a security was sold by defendant to plaintiff. *See* 22 Am.Jur. Pof. 3D 485, § 24–26 (Supp.2000)(suggested deposition questions establishing proof investment sold by defendant to plaintiff was security). This is because SLUSA does not concern internal products, such as an accounting firm which performs audits, but external products, such as the sale of securities to investors. *See id.* (discussing whether proper balance exists between interests of issuers and interests of investors under SLUSA and its predecessor Act). Here, the alleged loss is because of alleged accounting misfeasance. Subject matter jurisdiction under the SLUSA may therefore be lacking.

Presuming the SLUSA applies, the Court finds defendants have not met their procedural burden of establishing federal subject matter jurisdiction through the SLUSA. Plaintiffs carefully drafted their pleadings to avoid federal jurisdiction, *see Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366 (5th Cir.1995), and defendants bear the burden in this removal and remand proceeding. *See Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). The plain language of the SLUSA provides that *only* those covered class actions which allege misrepresentations "in connection with the purchase or sale of a covered security" "shall" be removable to federal court. 15 U.S.C. § 78bb(f)(1)(A), (B) (emphasis added). As plaintiffs' first amended petition alleges misrepresentation damages caused by the holding of covered securities, as opposed to the purchase or sale of covered securities, the alleged misconduct did not occur in connection with the purchase of covered securities as required by the SLUSA. The removal was therefore improper and this matter should be remanded to state court.

### STANDARD OF REVIEW

■■■ The plaintiffs are the master of their complaint and, as such, "[a] determination that a cause of action presents a federal question depends upon the allegations of the plaintiffs' well-pleaded complaint." *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 366 (5th Cir.1995). When plaintiffs have a choice between federal and state law claims, they may proceed in state court "on the exclusive basis of state law, thus defeating the defendant's opportunity to remove." *Id.* Thus, to support removal, the defendant must show a federal right is an essential element of plaintiffs' cause of action. *See id.*

■■■ The burden of establishing subject matter jurisdiction is placed upon the party seeking removal. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). Additionally, removal jurisdiction raises significant "federalism concerns" and must

be strictly construed. *Id.* (citations omitted). The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441, which provides in relevant part:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, maybe removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a); *see also Finn v. American Fire & Cas. Co.,* 207 F.2d 113, 115 (5th Cir.1953), *cert. denied,* 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954). Here, there is no allegation of diversity of citizenship between the parties; therefore, the propriety of removal depends on whether this case falls within the provisions of 28 U.S.C. section 1331 providing: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## DISCUSSION

 The Securities Act of 1933 and the Securities Exchange Act of 1934 were written in response to investor mistrust of the securities markets occasioned by the collapse of the stock market in 1929.[2] *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194–95, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)(setting forth legislative history of 1933 and 1934 Acts). "The Securities Act of 1933 (1933 Act), 48 Stat. 74, as amended, 15 U.S.C. § 77a et seq., was designed to provide investors ... protect[ion] ... against fraud [though the full disclosure of material information concerning the sale of particular securities,] and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Id.* at 195, 96 S.Ct. 1375. The 1934 Act was intended to prevent manipulation of stock prices through regulation of the securities, exchanges and over-the-counter markets. *Id.* The 1934 Act also created the Securities and Exchange Commission, which was given a full compliment of enforcement powers over issuers on behalf of investors. *Id.* (listing statutes granting the Commission "an arsenal of flexible enforcement powers").

In addition to the 1933 and 1934 Acts, states enacted statutes and made regulations applicable to protect investors from abuses in the securities market. *See* 69 Am. Jur.2d, Securities Regulation—State §§ 1–10. These statutes and regulations may provide the investor with causes of action against issuers in addition to those provided by federal law, and are commonly known as "blue sky laws." *See id.* As with the federal securities Acts, blue sky laws prohibit fraud in connection with an issuer's sale of securities to an investor. *See id.*

While the original exchange Acts were established within the context of protecting the individual investor from predatory corporate insiders, *see Ernst & Ernst,* 425 U.S. at 195, 96 S.Ct. 1375, by the time of the SLUSA the emphasis had shifted and it was the corporation which was perceived

2. "Although stocks, bonds and other types of securities have been publicly traded since the American Revolution, there was no serious effort to regulate the process until 1933. The speculative fury of the stock markets in the 1920s ended abruptly with the 1929 crash and the Great Depression. Millions of small investors saw the value of their investments wiped out as the Dow Jones Industrial Average, the most widely followed indicator of stock prices, fell from its high of 381.2 in 1929 to a low of 41.2 in 1932, a decline of nearly ninety percent. The public demanded reform." 22 Am.Jur. Pof. 3D 485, § 1 (Supp. 2000).

as in need of protection from overly litigious investors. *See* H.R. CONF. REP. No. 104–369, at 31–32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730–31(discussing how issuers of securities had been harmed by baseless litigation). By the mid–1990s, it had become clear to Congress the rise of the professional plaintiff, abusive discovery practices, imposition of joint and several liability upon largely innocent parties and windfall damages had all impacted negatively upon corporate issuers of securities. *See id.* at 31–33, 37, 42. In light of these issues, Congress revised the 1933 and 1934 securities exchange acts and enacted the Private Securities Litigation Reform Act ("PSLRA") of 1995. Pub.L. No. 104–67, 109 Stat 737. The PSLRA addressed each of Congress's concerns through a series of provisions which made it more difficult for investors to bring securities fraud class actions against corporate issuers. *See id.*

Three years later, the SLUSA was enacted in response to a perceived "loophole" in the PSLRA which allowed investors alleging securities violations to avoid the PSLRA by bringing their claims against corporate issuers in state court. Eugene P. Caiola, *Retroactive Legislative History: Scienter Under the Uniform Security Litigation Standards Act of 1998,* 64 Ala. L.Rev. 309, 334 (2000); *see also* H. REP. No. 105–640 (1998), *available at* 1998 WL 414917(indicating class action plaintiffs were using state courts to avoid strictures of PSLRA). The rise of state court class actions led issuers to seek further legislation restricting such suits. *See House Votes to Keep Securities Class Actions in Federal Courts,* 13 LIAB. WEEK 30, at 1 (July 27, 1998), *available at* 1988 WL 12498605. Shifting securities fraud litigation to state court, companies issuing nationally-traded stock argued, would undermine the effectiveness of the PSLRA. *See id.* Congress reacted by passing the SLUSA, which became law on November 3, 1998. Public L. No. 105–353, 112 Stat. 3227 (1998)(codified in scattered sections of 15 U.S.C.).

■ The purpose of SLUSA was "[t]o protect the interest of shareholders and employees of public companies which [were] the target of meritless 'strike' suits." H.R. CONF. REP. No. 105–803 (1998), *available at* 2000 WL 103964. Congress sought to make federal courts the exclusive venue for most securities fraud class action litigation because:

> [C]ompanies cannot control where their securities are traded after an initial public offering.... As a result, companies with publicly-traded securities cannot choose to avoid jurisdictions which present unreasonable litigation costs.

*Id.* Plaintiffs would thus be prevented "from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State court rather than Federal court." *Id.* The SLUSA, along with the PSLRA, was thus intended to set uniform standards for the filing of class action fraud lawsuits against companies issuing nationally-traded securities. *See* S. REP. No. 105–182 (1998), *available at* 1998 WL 226714 (indicating congressional intent in enacting PSLRA was to establish uniform pleading requirement); H.R. CONF. REP. No. 105–803 (1998), *available at* 2000 WL 103964 (indicating Congress's intent in enacting PSLRA was to establish a uniform pleading requirement); Statement on Signing SLUSA (Nov. 3, 1998), in 2 PUB. PAPERS, at 1974–75 (setting forth President's belief PSLRA provided uniform national pleading standard which, combined with SLUSA, would provide uniform national standard for securities fraud liability). Like the PSLRA, the SLUSA was supported by issuers, "particularly high-tech companies whose stock is particularly volatile and who claimed that their mem-

**590**

bers ha[d] been victimized by 'strike suits,' filed whenever a share price unexpectedly lost value and ultimately settled for their nuisance value." *See House Votes to Keep Securities Class Actions in Federal Courts*, 13 LIAB. WEEK 30, at 1 (July 27, 1998), *available at* 1998 WL 12498605.

Perhaps in reaction to investor opposition seeking to retain jurisdiction in more "plaintiff-friendly" state courts, John Borland, *House Passes Shareholder–Lawsuit Reform*, CMP TechWeb, July 22, 1998, at 1, *available at* 1998 WL 9297200 (SLUSA would make it more difficult for investors with genuine complaints about an issuer's financial practices, such as cases of fraud or insider trading, to win redress in court), SLUSA does not preclude all state actions against the issuers of securities. Instead, the Act is more complex, preempting only certain categories of class actions. *See* 15 U.S.C. § 78bb(f)(2), (3). SLUSA includes a unique definition of "class action," coverage limited to nationally traded securities and a significant exemption from the general preemptive effect of the statute. A covered class action generally is a class action involving common questions of law or fact brought on behalf of fifty or more unnamed parties. *Id.* § 78bb(f)(5)(B). A "covered security" is a security listed on the New York Stock Exchange, the American Stock Exchange, or the NASDAQ National Market, or a security issued by an investment company which is registered or for which a registration statement has been filed under the Investment Company Act of 1949. *See id.* § 78bb(f)(5)(E)(adopting definition of covered security from 15 U.S.C. § 77r(b)). The savings clause preserves in state court certain covered class actions " based upon the statutory or common law of the state in which the *issuer* is incorporated." 15 U.S.C. § 78bb(f)(3)(A)(i)(emphasis added)(referring to issuer and not accounting firm or individual accountants).

In summary, the 1933 Securities Act and the 1934 Securities Exchange Act were passed to restore investor confidence in the securities markets. *See Ernst & Ernst*, 425 U.S. at 194–95, 96 S.Ct. 1375. The PSLRA was passed in response to abusive class action securities lawsuits against corporate issuers of nationally-traded stock. *See* H.R. CONF. REP. No. 104–369, at 31–32, *reprinted in* 1995 U.S.C.C.A.N. 730, 730–31. The SLUSA was passed to curtail investor actions against issuers filed in state courts in response to the PSLRA. H. REP. NO. 105–640 (1998), *available at* 1998 WL 414917 (indicating class action plaintiffs were using state courts to avoid strictures of PSLRA). The goal of the securities acts, including the SLUSA, was to regulate the relationship between securities brokers and exchanges and investors and to have a uniform balance between state and federal jurisdiction.

Although germane to issues which exist contemporaneous to the adoption of the SLUSA, it could be concluded plaintiffs' accounting misfeasance case is not responsive to issues which manifested themselves within the context of the passage of the securities regulation Acts. The crux of plaintiffs' case is that defendants should have recognized the investors' money was not used to buy investments for the accounts of the investors, but to pay for InverWorld transactions and loans to insiders, friends and other entities close to Jose Zollino. Alternatively, plaintiffs' argue, if the funds were used to purchase legitimate securities for the investors, those securities were pledged without plaintiffs' knowledge as collateral for InverWorld's or its principals' own investments and debts. These are accounting misfeasance allegations as opposed to allegations which would affect the capital markets. The issue was in 1933 and through

the passage of the SLUSA continues to be: What would affect the capital market scheme?. As this issue is not related to accountants allegedly committing malpractice, the SLUSA is arguably not applicable.

Defendants challenge "plaintiffs' mistaken understanding regarding the reach" of the SLUSA and their "erroneous claim that the Act was not intended to cover an accounting misfeasance case." As defendants note: "Congress enacted the procedural safeguards in SLUSA and ... the PSLRA in part at the urging of accountants to provide them with protection from frivolous securities lawsuits and from being sued as a deep-pocket defendant for wrongs committed by others." H.R. Conf. Rep. No. 104–369, at 31–32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730–31. While this may be true, the SLUSA savings clause which preserves certain actions in state court refers to "issuers" of securities. 15 U.S.C. § 78bb(f)(3)(A)(i). From the language of the statute, it is possible Congress intended the SLUSA to apply only to actions brought against issuers of publicly traded stock, not accounting firms which perform audits for the issuer or intermediaries of the issuer.

The savings clause of the SLUSA also provides certain actions are preserved in state court if they arise in connection with the purchase or sale of an equity security by "an affiliate of the issuer." 15 U.S.C. § 78bb(f)(3)(A)(ii). The term "affiliate of the issuer" means "a person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with, the issuer." *Id.* § 78bb(f)(5)(A). There is no indication of the amount of control the InverWorld entities exercised over defendants and no indication the savings clause applies to plaintiffs' claims. Nonetheless, an argument can be made Congress was strictly limiting SLUSA's application to those entities involved in the external process of issuing stock.

The Court recognizes there is authority to the contrary, *Prager v. Knight/Trimark Group, Inc.*, 124 F.Supp.2d 229, 233 (D.N.J.2000)(SLUSA applies to non-issuers of publically traded securities, including accounting firms); *Abada v. Charles Schwab & Co.*, 68 F.Supp.2d 1160, 1168 (S.D.Cal.1999)(denying motion to remand finding defendant need not be an issuer or affiliate thereof for SLUSA to apply). Presuming Congress intended the SLUSA to apply to actions brought against non-issuers of publicly traded securities, such as accounting firms and individual auditors, the Court must determine whether defendants have shown plaintiffs' first amended petition is subject to mandatory removal under the Act. The SLUSA provides in relevant part:

(f) LIMITATIONS ON REMEDIES.— (1) CLASS ACTION LIMITATIONS.—No covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any State or Federal court by an private party alleging—

(A) a misrepresentation or omission of a material fact *in connection with the purchase or sale of a covered security;* or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance *in connection with the purchase or sale of a covered security.*

(2) REMOVAL OF COVERED CLASS ACTIONS.—Any covered class action brought in any State court *involving* a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)(A), (B) & (2) (emphasis added). It is undisputed plaintiffs' first amended petition is, at least in part, a "covered class action" and involves a "covered security" within the meaning of the Act. It is also undisputed the first amended petition alleges misrepresentations and omission of material facts. The only question is whether the first amended petition alleges misrepresentations or omissions of material facts "in connection with" or "involving" the "purchase or sale" of those covered securities. If the alleged misrepresentations are alleged to have been "in connection with the purchase or sale" of a covered security, then the case was properly removed and the motion to remand should be denied. If the alleged misrepresentations are not alleged to have been "in connection with the purchase or sale" of a covered security, then the removal was improper and the motion to remand should be granted.

■ Plaintiffs' first amended petition alleges misrepresentations based upon the following three subclass categories of persons and entities:

i. All persons or entities that *purchased or held IGS or IWG Internal Products,* as that terms is defined herein, from 1993 to present and did not sell or otherwise dispose of said products prior to June 1999;

ii. All persons or entities that *purchased or held any "uncovered security"* as that term is defined in the Private Securities Litigation Reform Act;

iii. *All persons or entities that held any "covered security" as that term is defined in the Private Securities Litigation Reform Act of 1995 at all relevant times through 1993 through present and did not sell or otherwise dispose of said products prior to June 1999;* ....

(Emphasis added). Regarding subclass category (i), plaintiffs in the first amended petition define "Internal Products" sold by InverWorld to its investors as "IGS or IWG created issuances, including without limitation money-market deposits, memorandum or promissory notes and other instruments in which IGS or IWG was the direct obligor to the investor." None of the Internal Products which were sold by IGS or IWG were "covered securities" because they were sold directly to investors by those entities. As these Internal Products were not sold on any of the United States securities exchanges, there is no dispute plaintiffs' subclass category (i) claims for misrepresentation in purchasing and holding Internal Products do not fall within the SLUSA. As to subclass category (ii), it is also undisputed the purchase of "uncovered" securities does not fall within the SLUSA. By definition, the Act applies solely to "covered" securities listed on United States securities exchanges. Because these subclass category (ii) claims do not fall within the statute, it is also undisputed investors who purchased or held uncovered securities are not within the purview of the SLUSA.

The remaining subclass, category (iii), is the SLUSA lynchpin upon which defendants base their notice of removal. Defendants argue plaintiffs' subclass category (iii) investors who "held" covered securities does not exclude persons who "purchased" securities during the class period. Plaintiffs respond category (iii) is explicitly limited to damages caused by the holding of covered securities and the loss of value which resulted from such holding. They argue they are not seeking purchaser or seller damages arising out of any alleged misrepresentation which may or may not have occurred when they purchased the covered stock. Rather, plaintiffs seek damages for being fraudulently induced to

continue to hold stock after they and the category (iii) putative class members had purchased the securities. Plaintiffs maintain they are not asserting a claim "in connection with the sale or purchase" of a covered security and thus their claims are not subject to mandatory removal under the SLUSA.

The Court recognizes a narrow reading of plaintiffs' subclass category (iii) definition could encompass misrepresentations in connection with the putative class members' purchase of covered securities. In and of itself, plaintiffs' description of this subclass could be read to include investors who purchased securities at any time before or during, and held to the end of, the class period because they would also have "held" the securities during the class period. It is also true the petition does not specifically disclaim reliance by members of the category (iii) subclass on misrepresentations made before they purchased their covered securities. However, plaintiffs have "gone to great lengths" to stress that their first amended petition alleges misrepresentations only in the holding of covered securities. The crux of plaintiffs' complaint is that defendants affirmatively misrepresented to three categories of investors in defendants' 1993 to 1997 audits of financial statements that the InverWorld entities were solvent, when, in fact, InverWorld was becoming insolvent. Subclass category (i) includes purchasers and holders of Internal Products; subclass category (ii) includes purchasers and holders of uncovered securities; and subclass category (iii) includes holders of covered securities. Subclass categories (i) and (ii) are not governed by the SLUSA because the Act does not apply to the types of securities purchased or held. Specifically, the SLUSA is not applicable to Internal Products and uncovered securities. Although the stocks purchased by subclass category (iii) claimants are covered securities for

purposes of the Act, the first amended petition alleges misrepresentations only in the holding of these covered securities and nowhere do plaintiffs allege subclass category (iii) includes purchasers. Rather, as plaintiffs argue, they have "expressly carved out and excluded [purchasers] when they elected to allege only claims for *holding* covered securities, not the purchase or sale of covered securities." (Emphasis in original).

While their first amended petition does not expressly disavow injury resulting from the purchase of covered securities, neither do plaintiffs specifically claim any damages resulting from the purchase of covered securities. Plaintiffs maintain their "class allegations do not include any claims based upon the purchase of covered securities, nor do they seek any relief based upon the purchase of covered securities." Plaintiffs stress their "class allegations specifically set forth three—and only three—subclasses upon which relief is sought from defendants" and emphasize an intent to absent from their amended petition a class allegation based upon the purchase of a covered security. As such, plaintiffs' amended petition states that only those misrepresentations which occurred after subclass category (iii) investors purchased their covered stock resulted in these class members being deceived into holding their stock.

The Court also recognizes a broad reading of plaintiffs' factual description of their case contained within the first amended petition could encompass misrepresentations in connection with the purchase of covered securities. Plaintiffs' petition contains thirty-nine pages of background facts and a statement of the nature of the case which include references to investors being "duped into investing their savings" with the InverWorld entities. However, plaintiffs emphasize their petition alleges class

claims for misrepresentation "based exclusively upon the purchase of non-covered securities, or the 'holding' of securities," neither of which invoke the SLUSA. Plaintiffs explain factual allegations related to the purchase of securities are intended to apply to plaintiffs and purported class members included in subclass categories (i) and (ii), not category (iii). As such, no SLUSA jurisdiction arises from factual allegations which encompass the purchase of covered securities because no class allegations are based upon them.

Pursuant to these limitations, plaintiffs' amended petition alleges only that the alleged misrepresentations resulted in class members being deceived into holding their covered securities, not in connection with the purchase of covered securities from InverWorld. Given plaintiffs' characterization of the first amended petition, and the fact they do not expressly state a cause of action for misrepresentation made to purchasers of covered securities, this Court declines to conclude plaintiffs' petition states a cause of action for misrepresentations made in connection with purchases of covered securities. Because plaintiffs have not alleged defendants' misconduct occurred in connection with the purchase (or sale) of covered securities, the first amended petition was not properly removed under the SLUSA and this matter must be remanded for lack of subject matter jurisdiction to state court.

Defendants argue this Court should disagree with decisions which dismissed or remanded cases to state court where plaintiffs' claims related to holding covered securities, not the purchase or sale of covered securities as required by the SLUSA. *See Gordon v. Buntrock,* No. 00 CV 303, 2000 WL 556763, at *2 (N.D.Ill. Apr.28, 2000)(remanding to state court because damages related to holding covered securities, not purchase or sale as required by

SLUSA); *Hines v. ESC Strategic Funds, Inc.,* No. 3:99–0530, 1999 WL 1705503, at *6 (M.D.Tenn. Sept.17, 1999)(dismissing state law claims pursuant to SLUSA except for state claim not involving purchase or sale of covered security); *Lalondriz v. USA Networks,* 54 F.Supp.2d 352, 353–54 (S.D.N.Y.)(remanding to state court as preserved action), *adhered to on reconsideration by* 68 F.Supp.2d 285, 286 (S.D.N.Y.1999)(holding remand was appropriate and SLUSA did not apply because plaintiffs' petition stated no claim for purchase or sale of covered security). Defendants also argue *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), does not support plaintiffs' position.

The Court in *Blue Chip Stamps* held that claims brought on behalf of persons who claimed they were defrauded into not purchasing a stock were not covered under section 10b of the Securities Exchange Act of 1934. *See id.* at 725, 755, 95 S.Ct. 1917. In so holding, the Court noted "[o]bviously, this disadvantage is attenuated to the extent that remedies are available to non-purchasers and nonsellers under state law." *Id.* at 738 n. 9, 95 S.Ct. 1917. As with section 78bb(f) of the SLUSA, the 1934 Act made it unlawful to use deceptive devices or make misleading statements "in connection with the purchase or sale of any [covered] security." *Id.* at 728, 95 S.Ct. 1917. *Blue Chip Stamps* does seem to support plaintiffs' position that persons who were allegedly defrauded into continuing to hold a stock (nonsellers or holders) may state valid claims under state theories of recovery without running afoul of federal securities law. *See id.* at 728, 738–39 & n. 9, 748, 95 S.Ct. 1917.

Regarding district court authorities, the undersigned declines to disagree with decisions rendering the SLUSA inapplicable to a complaint seeking damages for being

fraudulently induced to hold stock. This Court is bound by the plain language of the statute, *see Immigration & Naturalization Serv. v. Hector*, 479 U.S. 85, 90–91, 107 S.Ct. 379, 93 L.Ed.2d 326 (1986), and that language provides *only* those covered class actions which allege misrepresentations "in connection with the purchase or sale" of a covered security "shall" be removable to federal court. 15 U.S.C. § 78bb(f)(2)(emphasis added). In enacting the SLUSA, the legislative branch must have been aware of the interpretation of section 10(b) of the 1934 Act, which recognized causes of actions for the nonpurchase or nonsale of securities were not covered by the 1934 Act and state law would fill those gaps. *See Blue Chip Stamps*, 421 U.S. at 738 n. 9, 95 S.Ct. 1917. Congress could have expanded the scope of actions covered by the SLUSA by providing that claims alleging misrepresentations in connection with the failure to purchase or sell a covered security shall also be removable to federal court. This is particularly true in light of the fact the SLUSA was intended to establish a uniform pleading requirement, *see* H.R. Conf. Rep. No. 105–803 (1998), *available at* 2000 WL 103964, and proponents of the Act asserted the preemptive legislation was necessary to stop an "unprecedented shift" of securities class actions from federal to state courts. *See* 143 Cong. Rec. S10712 (daily ed. Oct. 8, 1997)(statement of Sen. Domenici), *available at* 1997 WL 618070(citing study indicating forum shopping allows plaintiffs' attorneys to continue same abusive practices the PSLRA attempted to eliminate). Because Congress did not so provide, this Court concludes the SLUSA subjects only those actions in which the plaintiffs allege misrepresentations occurred in connection with the purchase or sale of a covered security to removal in federal court. As plaintiffs have not alleged defendants' misrepresen-

tations occurred in connection with the purchase or sale of covered securities, the first amended petition was not properly removed under the SLUSA. This matter must therefore be remanded to state court for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand (docket no. 6) is GRANTED such that the above-styled and numbered cause is REMANDED to the 224th Judicial District Court, Bexar County, Texas, for lack of subject matter jurisdiction;

IT IS FURTHER ORDERED that the District Clerk is Directed to send a certified copy of this Order of Remand for Lack of Subject Matter Jurisdiction to the Clerk of the State Court.

It is so ORDERED.