CAPE ANN INVESTORS LLC

v.

Donald E. LEPONE, Robert F. Burns, Noreen Gottfredsen and Deloitte & Touche LLP

James R. Young, as Trustee of the Nutramax Litigation Trust

v.

Donald E. Lepone, Robert F. Burns, Noreen Gottfredsen, and Deloitte & Touche LLP

No. CIV. 00–11531–RGS.

United States District Court, D. Massachusetts.

Dec. 15, 2003.

---

**3.** The Court denies Plaintiff's request for pre-judgment interest on his fee award.

Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, Ian D. Roffman, Boston, MA, for Deloitte & Touche, Defendant.

Reid M. Figel, Kevin B. Huff, Silvija A. Strikis, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, for James R. Young, Trustee.

Noreen Gottfredsen, Beverly, MA, for Noreen Gottfredsen, Defendant.

Mark C. Hansen, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, for Cape Ann Investors, Plaintiff.

Andrea J. Robinson, Jeffrey B. Rudman, Hale and Dorr, LLP, Boston, MA, for Donald E. Lepone, Noreen Gottfredsen, Robert F. Burns, Defendants.

## MEMORANDUM AND ORDER ON DEFENDANT DELOITTE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

STEARNS, District Judge.

### BACKGROUND [1]

This case arose out of the bankruptcy of a once seemingly promising dietware company, NutraMax Products, Inc. (NutraMax). According to the Second Amended Complaint, the failure of NutraMax was caused by a massive internal accounting fraud, the uncovering of which precipitated the company's meltdown. Defendant Deloitte & Touche LLP (Deloitte), the outside accountant, gave NutraMax clean bills of audit health in 1996, 1997, and 1998, despite private warnings to NutraMax's Audit Committee of "reportable conditions" involving improper inventory valuation, understated expensing, and insufficient bad debt reserves. In the spring or summer of 1999, a newly installed Chief Operating Officer reported to NutraMax's Board of Directors that an internal investigation had revealed a $70 million discrepancy between NutraMax's claimed and ac-

---

1. The facts, insofar as necessary for present purposes, are set out in *Cape Ann Investors LLC v. Lepone,* 171 F.Supp.2d 22 (D.Mass. 2001), *aff'd in part and rev'd in part sub nom. Young v. Lepone,* 305 F.3d 1 (1st Cir.2002).

tual assets. The Board promptly fired the senior officers of the company. A subsequent restatement of earnings imploded NutraMax's balance sheet from a positive $21 million to a negative $46 million.

As day follows dawn, Deloitte and the ousted officers fell into the cross hairs of litigation. Suit was initially brought by Cape Ann Investors LLC (Cape Ann), an investors' syndicate whose substantial equity position in NutraMax had been rewarded with a seat on the Board of Directors and the Audit Committee. Shortly after the suit was filed, NutraMax sought Chapter 11 bankruptcy protection. Cape Ann then assigned its claims to the NutraMax Litigation Trust (Trust), an entity created by the Bankruptcy Court to pursue any potentially recoverable assets.

On March 9, 2001, James R. Young, the Trustee, filed an Amended Complaint against Deloitte,[2] alleging federal securities law violations and state law claims of fraud, misrepresentation, malpractice, and violations of the Massachusetts Consumer Protection Act. The Amended Complaint consolidated all pre-petition claims against Deloitte. These fell into three classes: (1) the claims of NutraMax itself; (2) the claims of NutraMax's senior secured lenders (the Creditors); and (3) the claims of Cape Ann and various other unnamed NutraMax shareholders who had "purchased or otherwise acquired NutraMax common stock when its price was artificially inflated by [Deloitte's] false statements ..., as well as those ... who were induced to maintain their investment in NutraMax common stock by [Deloitte's] false statements" (the Electing Shareholders). Second Amended Complaint, ¶ 15. The claims

of all class members were assigned to the Trust for the sole benefit of the Electing Shareholders.

On October 31, 2001, this court dismissed the federal claims as timed-barred. *See Cape Ann Investors LLC v. Lepone*, 171 F.Supp.2d 22 (D.Mass.2001). The court reasoned that Cape Ann, as a member of NutraMax's Audit Committee, was on notice as of November 28, 1997 (when Deloitte submitted the second management letter disclosing "reportable conditions"), of an impending injury and had failed to undertake a diligent investigation. "[H]ad Cape Ann done what its fiduciary duty required it to do, it would have discovered the fraud, if not in 1997, certainly by 1998, when Deloitte sounded the third alarm." *Id.* at 27. Consequently, the court ruled that Cape Ann's federal claims (which were brought on August 1, 2000) were barred by Rule 10b–5, which requires that an action be brought within one year after a plaintiff discovers the facts constituting a violation, or in the case of fraudulent concealment, within one year of the time when the plaintiff, in the exercise of reasonable diligence, should have discovered the fraud. The court further ruled that the federal claims of the "new plaintiffs" ( the Creditors and the Electing Shareholders) were wholly separate from those asserted by Cape Ann and therefore did not under Fed.R.Civ.P. 15(c)(3), relate back to the filing date of Cape Ann's original complaint. Thus, the court ruled that these claims (filed on March 9, 2001) were also barred by the Rule 10(b)–5 statute of limitations.[3] Finally, the court declined to exercise supplemental jurisdiction over the Trust's state law claims.

---

**2.** The litigation involving the ousted officers was settled in the interim, leaving Deloitte as the last-standing defendant.

**3.** As the First Circuit observed, "[t]he date of the suit—March 9, 2001—was more than one

year after (1) NutraMax's blockbuster announcement of August 18, 1999 [of the details of the fraud] and the resultant 40%, drop in the price of the company's stock, ... and (3) Deloitte's withdrawal of its audit reports." *Young*, 305 F.3d at 13 n. 9.

The Trust then appealed. On September 10, 2002, the First Circuit affirmed in part and reversed in part. The Court of Appeals agreed with the district court's analysis of the relation-back issue and affirmed the ruling that the federal claims of the "new plaintiffs" were time-barred. *Young*, 305 F.3d at 17. On the other hand, while acknowledging it a "close case on the facts," the Court ruled that "we do not think that a court could conclude, on the bare bones of the amended complaint, either that the management letters amounted to storm warnings or that those communications inexorably placed Cape Ann on inquiry notice. By like token, it cannot be said, as a matter of law, that Cape Ann failed to exercise diligence commensurate with its knowledge." *Id.* at 12. Consequently, the Court of Appeals vacated the dismissal as to Cape Ann and remanded that aspect of the case to the district court for further proceedings.

Prior to the First Circuit's decision, in response to the district court's declination of supplemental jurisdiction, the Trustee filed a complaint in the Massachusetts Superior Court (the State Law Complaint). Deloitte promptly removed the State Law Complaint to the federal district court and moved to dismiss, arguing that the State Law claims as plead were preempted by the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 78bb. The Trustee, with similar alacrity, moved to remand, a motion which the court denied without prejudice. It then stayed proceedings pending the decision by the Court of Appeals. On June 13, 2003, after that decision had issued, the Trustee moved to dismiss the Amended Complaint's federal cause of action and renewed the motion to remand the State Law Complaint. The court allowed the motion to amend, which left pending in the district court two essentially identical complaints. The court then indicated that it would address Deloitte's preemption argument in the context of the Trustee's renewed motion to remand, and it does so now.

### DISCUSSION AND RULINGS OF LAW

■ 1. SLUSA provides that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging -

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). SLUSA preemption requires a showing of four elements: (1) a "covered class action;" (2) based on state law; (3) involving a "covered security;" and (4) an allegation that the defendant misrepresented or failed to disclose a material fact "in connection with the purchase or sale of such security." *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342 (11th Cir.2002).

■ 2. The Amended Complaint insofar as the Electing Shareholders are concerned describes a covered class action. SLUSA preempts "any single lawsuit in which damages are sought on behalf of more than 50 persons or prospective class members . . . ." 15 U.S.C. § 78bb(f)(5)(B). Deloitte asserts that the Trustee seeks damages on behalf of more than 50 persons "on information and belief." The Trustee, while not disclosing the precise number of Electing Shareholders that he represents, does not dispute the assertion, and I therefore conclude that the first element of SLUSA is satisfied.

3. The Trust is not, as the Trustee contends, "one person" within the meaning of SLUSA. The Act defines a unitary entity as one "not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(D). The Trust Agreement describes the primary purpose of the Trust as "prosecuting the Causes of Action contributed to it . . . and distributing to the Class 6 Beneficiaries [the Electing Shareholders] the assets of the Trust remaining after payment of all claims against or assumed by the Trust." Litigation Trust Agreement § 3.1. The Trustee's argument that the Trust is a unitary entity because it was created not to pursue any particular action, but all "such actions as necessary to recover on behalf of beneficiaries," makes no sense conceptually or legally. Id. § 1.1.[4] Nor does the fact that the Trustee is empowered to exercise discretionary powers not normally associated with a Rule 23 class representative make any material difference under SLUSA.[5] The Trustee's fiduciary duty is to use whatever powers he has been granted for the benefit of the Electing Shareholders. In that respect, his role is no different than that of any shareholder class representative. Finally, the Trustee's argument that because the Trust is a creation of the Bankruptcy Court, the strictures of Rule 23 do not apply is simply wrong. See Fed. R. Bank. P. 7023.

4. The role of SLUSA in enforcing the intent of the Private Securities Litigation Reform Act (PSLRA) of 1995 was explained by the Eleventh Circuit in Riley.

In 1995, after determining that the federal securities laws, and especially § 10b–5, were being abused through the bringing of "strike suits," Congress passed the PSLRA. The PSLRA set heightened pleading requirements for class actions alleging fraud in the sale of national securities, see 15 U.S.C. § 78u–4, and also provided for a mandatory stay of discovery to allow district courts, prior to discovery, to determine the legal sufficiency of claims brought in securities class actions, see 15 U.S.C. § 77z–1(b). These reforms were designed to enable securities defendants to obtain early dismissal of frivolous class actions, and thereby avoid the high expense of discovery. See, e.g., Lander v. Hartford Life and Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir.2001).

By 1998, however, Congress realized that many of the goals of PSLRA were being frustrated because plaintiffs were simply shifting their securities class actions from federal to state court, where the PSLRA did not restrict their claims. See Pub.L. No. 105–353 § 2(2). By suing in state court under state statutory or common law (rather than under the federal securities laws), litigants were able to circumvent the restrictions placed upon securities claims in federal court. See id. To close this loophole in the PSLRA, Congress passed SLUSA, making federal court the exclusive venue for class actions alleging fraud in the sale of "covered securities." Congress accomplished this by providing for removal of state actions to federal court, and requiring the immediate dismissal of "covered lawsuits."

---

4. The Trustee's valid point is that SLUSA dos not bar a claim brought by an individual shareholder such as Cape Ann. Behlen v. Merrill Lynch, 311 F.3d 1087, 1092 (11th Cir. 2002). However, Cape Ann is named in the Amended Complaint as a member of the class of Electing Shareholders.

5. Even further afield is the suggestion that because the beneficiaries have differing rights of recovery, there are no "questions of law or fact common to the class." In any shareholder action, the right to recover will differ among class members depending upon the number and priority of the shares each member owns.

*Riley,* 292 F.3d at 1340–1341 (footnotes omitted). It is just such an end run of the PSLRA that the Trustee is seeking to effect.

■ 5. The parties agree that Nutra-Max stock qualified as a "covered security" from 1991 to October 23, 1996, the date on which the stock was de-listed by NAS-DAQ. *See* 15 U.S.C. § 77r(b). The Trustee argues that because the Trust is not seeking damages for any misrepresentations or omissions by Deloitte prior to October 23, 1996, this element of SLUSA is not satisfied. "Rather, the Trust seeks damages from purchases of stock based on Deloitte's false statements *only* insofar as they were re-stated after that date, and thus provided a new and independent basis for liability. Specifically, each time Deloitte republished earlier financial information in NutraMax's Consolidated Financial Statements or Forms 10–K, it made another independently actionable misrepresentation." Trustee's Opposition, at 14–15. The argument has an air of plausibility, but is very thin on substance. First, the Second Amended Complaint does not make the distinction that the Trustee now urges. *See, e.g., id.* ¶ 77. Second, and more important, given the Trustee's acknowledgment that under generally accepted accounting principles a financial statement is taken to include not only the report for the current audit period but also any other prior periods presented for comparison, adoption of the argument would open an exception that would swallow SLUSA. More plausible is Deloitte's reading of SLUSA as defining a "covered security" as one traded on a national exchange at the time the alleged misrepresentations were made, and not (necessarily) at the time the security was purchased. *See* 15 U.S.C. § 78bb(f)(5)(E). Because in an undifferentiated way, the Electing Shareholders are alleged to have relied on misrepresentations made in the 1995, 1996, 1997, and 1998 Financial Statements certified by Deloitte, I conclude that this element of SLUSA has been satisfied.

■ 6. In defining what is meant by the phrase "in connection with the purchase or sale of a covered security" (which is not defined by SLUSA), courts have consistently looked to Rule 10b–5 from which the phrase is borrowed. *Riley,* 292 F.3d at 1342. In a Rule 10b–5 context, misrepresentations that cause a shareholder to hold a stock, rather than buy or sell shares, are not actionable. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 754–755, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (there is no right of action under Rule 10b–5 unless a misrepresentation caused a plaintiff to actually buy or sell a stock). Again, courts have uniformly applied the *Blue Chip Stamps* rule in holding that SLUSA does not apply to claims based solely on the retention of securities. *See, e.g., Green. v. Ameritrade, Inc.,* 279 F.3d 590, 598–599 (8th Cir.2002); *Gutierrez v. Deloitte & Touche, LLP,* 147 F.Supp.2d 584, 594 (W.D.Tex.2001).

■ 7. The Trustee, relying on *Gutierrez,* argues that SLUSA does not preempt the claims of those Electing Shareholders who were induced by Deloitte's alleged misconduct to retain their shares of Nutra-Max. (The Trustee does not dispute that within the class of Electing Shareholders there are members whose claims are subject to SLUSA preemption). The argument is valid insofar as it goes. But the Amended Complaint offers no means of distinguishing the Electing Shareholders who were persuaded by Deloitte to buy NutraMax shares from those who were induced to hold their previously acquired NutraMax stock. This was precisely the situation in *Riley* where the trustees of a profit sharing plan alleged that a broker's misrepresentations had caused class members to purchase or hold shares of a failing mutual fund. Like the Trustee, the *Riley*

plaintiffs relied on *Gutierrez* in arguing that their mixed claims were not barred by SLUSA. The Eleventh Circuit rejected the argument, noting that *Gutierrez* was not on point as in that case the plaintiffs had carefully carved out and excluded purchasers of the disputed securities and had chosen to assert claims only on behalf of those who had held their stock. As the *Riley* Court held,

> [w]e agree with the *Gutierrez* court, that under *Blue Chip*, SLUSA does not apply to claims dealing *solely* with the retention of securities, rather than with purchase or sale. We also agree with the *Gutierrez* Court's implication, however, that when a claim that sweeps within its ambit actual purchases or sales of stock *is* covered by SLUSA, a plaintiff may not avoid SLUSA's restrictions simply by alleging that a given misrepresentation caused him *both* to purchase and hold a particular security.

For this reason, we agree with the district court that Performance Plan's suit is covered by SLUSA, and was not properly brought in state court, under state law. The simple fact is, unlike the carefully-crafted allegations in *Gutierrez*, Performance Plan's allegations in this case are not limited solely to the retention of covered securities. Paragraph 37, which Performance Plan submits as the principal source of its retention claim, states that Merrill Lynch made "material Misrepresentations and Omissions [that] induced the Plaintiffs and other Class members to *purchase and retain* shares of the Growth Fund during the Class Period." (emphasis added). This language clearly alleges that Merrill Lynch's conduct caused Performance Plan to *purchase* covered securities and [ ] retain them. The fact that class

members purchased *and then retained* their Growth Fund shares does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase. Thus, while in principle we agree with Performance Plan's argument that SLUSA does not apply to "holding" claims, and that such claims accordingly may be brought in state court, under state law, we do not find that the rule applies in this case. *Id.* at 1345. Because I perceive no material difference between the allegations in *Riley* and those of the Second Amended Complaint, I conclude that the fourth element of SLUSA has been satisfied.[6]

8. Because all of the elements of SLUSA are satisfied, the state law claims of the Electing Shareholders, as plead, are preempted by SLUSA.

9. This is not, however, the case with the common-law and Consumer Protection Act claims of NutraMax and the Creditors. Deloitte makes the clever, but less filling argument that because under the Trust Agreement the Electing Shareholders are to be the sole beneficiaries of any recovery, these claims are preempted by SLUSA. As Deloitte puts it, "all of the Trustee's purported claims involve a covered security because *only* Electing Shareholders have any economic interest in the claims, and they have such interest *solely* by virtue of their purchase of NutraMax securities." Deloitte Memorandum, at 14. The simple answer is that an assignment of a claim, as here, does not change its fundamental character. The assignment, for example, of a corporation's right of action involving a breach of fiduciary duty in satisfaction of a debt does not convert the fiduciary action into one for

---

**6.** If a class representative could give purchasers and sellers a free ride by salting into the class a member or two with holding claims, it would be a rare case in which SLUSA applied at all.

money due and owing. Consequently, the "garden variety" state law claims of Nutramax and the Creditors are not preempted by SLUSA. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir.2002) (state law breach of contract claims are not subject to SLUSA preemption).[7]

10. As the remaining claims involve matters solely of state law, the court will decline supplemental jurisdiction. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## ORDER

For the foregoing reasons, the court rules that the claims of the Electing Shareholders are preempted by SLUSA. The court will grant the Trustee thirty (30) days from the date of this decision to elect a remand of the claims of Nutramax and the Creditors as set out in the State Law Complaint or to file an Amended State Law Complaint carving out those Electing Shareholders whose claims are preempted by SLUSA.

SO ORDERED.

---

7. *Falkowski* is illustrative of the uniform approach taken by the courts in segregating claims that are preempted by SLUSA from pure state law claims that are not, thus rejecting Deloitte's argument that SLUSA applies to "actions" and not to claims. *See* Deloitte Reply, at 9. The single case that Deloitte cites for this proposition, *Greaves v. McAuley*, 264

F.Supp.2d 1078 (N.D.Ga.2003), is not to the contrary. In *Greaves*, the court applied SLUSA's so-called "Delaware carve-out" exception, which requires that certain qualifying state actions be remanded in their entirety. *See* 15 U.S.C. § 77p(d)(4). This case does not fit within the "carve-out" exception.