[891 NYS2d 324]

The RGH Liquidating Trust, on Behalf of Reliance Group Holdings, Inc., and Others, Respondent, v Deloitte & Touche LLP et al., Appellants.

First Department, December 8, 2009

**APPEARANCES OF COUNSEL**

*Kramer Levin Naftalis & Frankel LLP*, New York City (*Michael J. Dell, Jonathan M. Wagner* and *Timothy J. Helwick* of counsel), for appellants.

*Gage Spencer & Fleming LLP*, New York City (*G. Robert Gage, Jr., William B. Fleming* and *Laura-Michelle Rizzo* of counsel), for respondent.

**OPINION OF THE COURT**

FRIEDMAN, J.

This appeal requires us to determine whether a federal statute, the Securities Litigation Uniform Standards Act of 1998 (Pub L 105-353, 112 US Stat 3227, codified in pertinent part at 15 USC § 78bb [f] [SLUSA or the Act]), mandates the dismissal of fraud claims against an accounting firm asserted by plaintiff

RGH Liquidating Trust (the RGH Trust) on behalf of the holders of bonds issued by Reliance Group Holdings, Inc. (RGH), a now-defunct insurance holding company. We hold that SLUSA bars the assertion of the bondholders' claims in this single action because these claims, which did not originally belong to RGH itself, seek recovery under state law on behalf of more than 50 persons for injuries allegedly arising from misrepresentations relating to the purchase or sale of securities traded on a national exchange. On this pleading motion, however, the claims asserted by the RGH Trust on behalf of three other categories of RGH creditors (bank lenders, two former Reliance employees, and the Pension Benefit Guarantee Corporation [PBGC]) were correctly sustained. We therefore modify the order appealed from to the extent of granting the motion to dismiss the RGH Trust's amended complaint solely as to the claims asserted on behalf of the RGH bondholders, and affirm the denial of the motion as to the claims asserted on behalf of other identified RGH creditors.

## Relevant Facts Set Forth in the Amended Complaint and Documentary Evidence

RGH, through its subsidiary Reliance Financial Services Corp. (RFS), owned Reliance Insurance Company (RIC), a property and casualty insurer.[1] At all relevant times, defendant Deloitte & Touche LLP (Deloitte) functioned as Reliance's independent actuary and auditor. On or about February 25, 2000, Deloitte issued a statement of actuarial opinion for the year ended December 31, 1999, concerning RIC's insurance business. The statement of actuarial opinion was incorporated into Reliance's consolidated financial statements for the year ended December 31, 1999, which were audited by Deloitte. Based on its audit, Deloitte certified the 1999 consolidated financial statements as a fair presentation of Reliance's financial condition in accordance with generally accepted accounting principles. The 1999 financial statements, along with Deloitte's independent auditor's report, dated February 29, 2000, were publicly filed with the United States Securities and Exchange Commission on March 30, 2000, as an attachment to RGH's Form 10-K for the year ended December 31, 1999 (the 1999 10-K).

The amended complaint alleges that Reliance's 1999 consolidated financial statements, which Deloitte had certified,

---

1. In the remainder of this writing, the name "Reliance" is used to refer to RGH, RFS and RIC individually or in any combination.

incorporated various inaccuracies and misleading omissions whose "combined effect . . . was an overstatement of surplus by approximately $500 million and an underreporting of net loss reserves by approximately $500 million resulting in a total overstatement of $1 billion." It should be noted, however, that the picture of Reliance's financial condition available to its creditors at the time of the filing of the 1999 10-K was far from rosy; indeed, it was grim. Among other setbacks, the company was reported to have suffered an operating loss of $318.3 million in 1999. The 1999 10-K also included a message to shareholders stating that "Reliance Group's 1999 results were unacceptable" and describing 1999 as "our annus horribilis." A month before the filing of the 1999 10-K, on February 29, 2000, RGH had announced that it was suspending its quarterly dividends and that the maturity of its bank loans had been extended from March 31 to August 31, 2000.

The amended complaint alleges that the four categories of Reliance creditors on whose behalf this action is being prosecuted—bondholders, bank lenders, employees, and the PBGC—relied to their detriment on Deloitte's certification of the allegedly inaccurate 1999 financial statements in the following general ways:

> "(i) trustees for the bondholders did not exercise their rights under Trust Indenture Agreements including, but not limited to, notifying the bondholders that specific events of default had occurred and declaring the bonds due and payable; (ii) present bondholders did not take action to sell their bonds; (iii) new bond investors purchased bonds at inflated prices; (iv) the bank[ ] lenders and agents to the Credit Agreement did not know that specific events of default had occurred and did not exercise their rights under that Agreement including, but not limited to, calling the loans; (iv) [sic] the PBGC did not take action to prevent the inflation of pension benefits for which it would ultimately become financially responsible; and (v) employees of RGH and RFS did not take action to cash out their pension and employee benefits and instead stayed with the company. These Creditors reasonably relied upon Deloitte's and Lommele's misrepresentations and thus did not act or refrained from acting in a way to prevent or mitigate their losses of hundreds of millions of dollars."

Within a brief period after the filing of the 1999 10-K on March 30, 2000, RGH filed additional reports making plain that it was in dire straits. The Form 10-Q for the first quarter of 2000, which RGH filed on May 15, 2000, reported that Reliance had an operating loss (before gains on sales of investments) of $36.5 million during that period; that it had agreed to sell its surety operations; that Standard & Poor's and Moody's had placed RGH's senior and subordinated bonds on "credit watch with negative implications"; and that A.M. Best & Co. (Best) had placed its rating of RIC "under review with negative implications."

Thereafter, on August 14, 2000, RGH filed its 10-Q for the second quarter of 2000 (the August 14 10-Q), which reported, among other bad news: (1) that the company had an after-tax net loss of approximately $504 million for the quarter; (2) that actuarial net loss reserves were being increased by $444.2 million; (3) that Best's downgrading of RIC's rating during the quarter (from "A-" [Excellent] to "B++" [Very Good] and then to "B" [Fair]) was believed to "seriously impair [RIC's] ability to write many of its lines of business," as a result of which Reliance had entered into agreements to sell much of its property and casualty businesses and had written off its remaining $195.6 million goodwill balance; and (4) that, as a result of the Best downgrade, RGH "d[id] not expect to be able to obtain regulatory approval for dividends from [RIC] sufficient to fund the repayment at maturity of [RGH's] bank debt and the senior notes." The August 14 10-Q also warned, ominously:

> "The Company is in discussions with its creditors and regulators to develop a comprehensive plan to restructure its outstanding debt. However, there can be no assurance that its efforts will be successful. The Company is exploring a full range of alternatives to restructure its debt, among which would be to seek protection under the Federal Bankruptcy Code, which could be in conjunction with a negotiated settlement in advance of filing."

Reliance ultimately could not recover from its financial difficulties. A Pennsylvania court placed RIC in rehabilitation in May 2001 and in liquidation the following October. On June 12, 2001, RGH and RFS filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (11 USC).

In 2005, the bankruptcy court approved a reorganization plan for Reliance (the reorganization plan), pursuant to which

plaintiff RGH Trust was created and charged with, among other tasks, the liquidation of the assets of the Reliance estate for the benefit of the creditors. The property assigned to the RGH Trust pursuant to the reorganization plan included, besides the assets of the Reliance estate, certain "Creditor Litigation Claims." The "Creditor Litigation Claims" were defined, in pertinent part, to include any claim of any member of certain impaired classes of creditors (except for claims retained by creditors choosing to opt out and certain other exceptions not relevant here) that arose "from or in connection with [the creditor's] claims against [RFS] or [RGH]." The reorganization plan provided that, upon its taking effect, the RGH Trust obtained "all rights to litigate" the Creditor Litigation Claims, among other causes of action.

In 2006, the RGH Trust commenced this action against Deloitte and defendant Jan A. Lommele, a Deloitte principal. The original complaint asserted causes of action for fraud, inter alia, on behalf of both Reliance and its unsecured creditors. Supreme Court granted Deloitte's motion to dismiss the original complaint but gave the RGH Trust leave to replead the fraud claims on behalf of the creditors so as to allege reliance with more particularity (13 Misc 3d 1219[A], 2006 NY Slip Op 51908[U]). On the RGH Trust's appeal, this Court affirmed the dismissal with prejudice of all claims on behalf of Reliance (47 AD3d 516 [2008]). The fraud claims asserted on behalf of Reliance's unsecured creditors were not at issue on the prior appeal.

After the dismissal of the original complaint, the RGH Trust filed the present amended complaint on behalf of Reliance's unsecured creditors. The amended complaint asserts one cause of action for "actuarial fraud" and one cause of action for "accounting and auditing fraud" on behalf of the creditors, but, consistent with this Court's affirmance of the order dismissing the original complaint, omits any claims on behalf of Reliance itself. Deloitte again moved to dismiss. Supreme Court granted the motion solely to the extent of dismissing the claims asserted on behalf of unidentified former employees, and sustained the legal sufficiency of the remainder of the amended complaint (17 Misc 3d 1128[A], 2007 NY Slip Op 52181[U]). This appeal by Deloitte ensued.

## Analysis

We will first discuss the bondholder claims, which we hold to be barred by SLUSA, and then we will turn to the claims of

the remaining three categories of creditors (bank lenders, employees, and the PBGC) on whose behalf the action is being prosecuted.

I. The Bondholders

Deloitte argues that the claims the RGH Trust asserts on behalf of holders of bonds issued by Reliance are barred by SLUSA. We agree. Congress's purpose in enacting SLUSA was to prevent a group of more than 50 claimants, or a litigant seeking to represent a class having more than 50 prospective members, from evading the limits placed on actions under the federal securities laws by casting securities-related fraud claims as state-law claims in a single lawsuit (*see* SLUSA, Pub L 105-353, § 2, 112 US Stat 3227 [setting forth the findings that prompted the legislation]; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v Dabit*, 547 US 71, 82 [2006]). This is precisely what the RGH Trust and the bondholders are doing in this action. In this regard, we note that it is undisputed that the bondholders' claims against Deloitte, if brought under the federal securities laws, would have been time-barred under federal law when this action was commenced in 2006.[2]

SLUSA provides, among other things, that

> "[n]o covered class action [as defined by the Act] based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" (15 USC § 78bb [f] [1]).

---

**2.** The bondholders' claims accrued no later than March 30, 2000, the date of the public filing of the allegedly fraudulent 1999 10-K. At that time, private causes of action under section 10 (b) of the Securities Exchange Act of 1934, and rule 10b-5 promulgated thereunder, had a statute of limitations of the earlier of one year from discovery of the facts constituting the violation or three years from the violation (*see Lampf, Pleva, Lipkind, Prupis & Petigrow v Gilbertson*, 501 US 350, 364 [1991]). Under *Lampf*, the bondholders' claims would have become time-barred no later than 2002, the year after RIC went into liquidation and RGH and RFS went into bankruptcy. The subsequent extension of the relevant statute of limitations to the earlier of two years from discovery or five years from the violation by the Sarbanes-Oxley Act of 2002 (*see* 28 USC § 1658 [b]), even if applicable, would have resulted in the bondholders' claims under the federal securities laws becoming time-barred in 2003. In any event, to the extent that the bondholders' claims would have become time-barred under *Lampf* before the effective date of the Sarbanes-Oxley Act (July 30, 2002), Sarbanes-Oxley's extension of the statute of limitations would not have applied to such claims (*see In re Enterprise Mtge. Acceptance Co., LLC, Sec. Litig.*, 391 F3d 401, 406 [2d Cir 2004]).

The term "covered class action" is defined, in pertinent part, to mean

> "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members" (15 USC § 78bb [f] [5] [B] [i] [I]).

The term "covered security" is defined, in pertinent part, as a security that was listed on a national securities exchange at the time of the misstatement or omission alleged in the lawsuit (15 USC § 78bb [f] [5] [E] [referring to section 18 (b) of the Securities Act of 1933 (15 USC § 77r [b])]), as were the bonds issued by Reliance.

There is no dispute that the claims the RGH Trust asserts on behalf of the Reliance bondholders have most of the characteristics that trigger SLUSA's applicability. As pleaded by the RGH Trust itself, the claims are based on state law. Moreover, the RGH Trust does not dispute that the bondholders' claims are based on alleged misrepresentations made "in connection with the purchase or sale of a covered security."[3] Neither does the RGH Trust dispute that, apart from questions of individual reliance, the common questions of law and fact arising from the bondholders' claims (i.e., questions regarding the accuracy of the challenged statements and Deloitte's state of mind) predominate over any questions affecting only individual claimants.

Since it is undisputed that all the other elements required to render SLUSA applicable are satisfied, the RGH Trust's ability to pursue the bondholders' claims in this single lawsuit turns on whether those claims seek "damages . . . on behalf of more than 50 persons" (15 USC § 78bb [f] [5] [B] [i] [I]). The amended complaint, however, says nothing about the number of Reliance

---

3. Certain of the claims asserted by the RGH Trust on behalf of the bondholders are "holder" claims, that is, claims that bondholders suffered losses because they were allegedly induced by Deloitte's statements to continue to hold Reliance bonds. Although "holder" claims are not afforded a private remedy under the federal securities laws (*see Blue Chip Stamps v Manor Drug Stores*, 421 US 723 [1975]), such claims are nonetheless covered by SLUSA (*see Merrill Lynch, Pierce, Fenner & Smith Inc. v Dabit*, 547 US 71 [2006], *supra*).

bondholders whose claims are being asserted. The pleading, while identifying only five particular Reliance bondholders (Wexford LLC, Mariner Investment Group, PIMCO, Conseco, and Richard Meltzer), neither quantifies nor estimates the total number of such bondholders. Indeed, it does not even allege that the RGH Trust has information supporting a reasonable belief that there are 50 or fewer of them. The matter of the number of bondholders is simply ignored.[4]

Deloitte argues that, given the substantial and uncontradicted indications in the record that Reliance bonds are held by more than 50 persons, the amended complaint's silence on the number of bondholders justifies drawing an inference adverse to the RGH Trust.[5] After all, whether more than 50 bondholders assigned their Reliance-related litigation claims to the RGH Trust is a matter within the RGH Trust's knowledge or, at a minimum, something that it could readily ascertain without judicial assistance.[6] By contrast, there is no reason to believe

---

4. The amended complaint purports to assert claims on behalf of all Reliance bondholders, although, as noted, only five bondholders are named. For purposes of our discussion of the SLUSA issue, we assume, without deciding, that the claims of unidentified bondholders can be pleaded based on the alleged reliance of the indenture trustees of the bonds, as agents of the bondholders. In this regard, the amended complaint alleges that the indenture trustees relied on Deloitte's alleged misstatements in determining whether to declare the bonds in default.

5. Deloitte points to a number of strong indications in the record that the RGH Trust is suing on behalf of more than 50 bondholders. The amended complaint alleges that "[t]he largest group of creditors whose claims have been assigned to the RGH Liquidating Trust to administer are individuals and entities that purchased RGH bonds." According to the amended complaint, when RGH filed for bankruptcy in June 2001, there were approximately $290 million in principal of senior RGH bonds and $170 million in principal of subordinated RGH bonds outstanding (in each case, excluding bonds held by RGH itself). At the time of the bankruptcy filing, approximately $510 million (including interest) was due to the senior and subordinated bondholders but had not been paid. Further, in a previous federal securities class action brought against RGH executives by certain RGH bondholders and stockholders, it was alleged that RGH stockholders and bondholders numbered in the "hundreds, if not thousands," and were "so numerous that joinder of all members [of the class] [was] impracticable."

6. The amended complaint acknowledges that certain "institutions and individuals have identified themselves as bondholders by filing proofs of claim with the Bankruptcy Court." Neither in the amended complaint nor in any of its other submissions does the RGH Trust disclose how many bondholders filed such proofs of claim, although the RGH Trust presumably has this information in its immediate possession. While the RGH Trust's records may not identify those bondholders whose bonds were held in "street name" and who did not file individual proofs of claim in the bankruptcy case, the amended

that Deloitte has access to this information. Surely, Deloitte points out, the RGH Trust should not be permitted to artfully omit from its pleading (and to continue to withhold while litigating the ensuing motion to dismiss) factual information accessible to it that, if disclosed, would easily resolve the SLUSA issue. We agree with Deloitte that this sort of gamesmanship should not be indulged. A litigant should not be rewarded for deliberately omitting from its pleading potentially dispositive information within its purview. This is precisely what the RGH Trust is doing here, as is demonstrated by its brief opposing the motion to dismiss at Supreme Court, which contended that, if Deloitte's argument were valid, "the [RGH] Trust should be permitted to amend its complaint to *reduce* the total number of bondholders to 50" (emphasis added).[7]

In any event, it is, at best, disingenuous for the RGH Trust to take the position that it cannot now be determined whether the amended complaint asserts the claims of more than 50 bondholders. Deloitte brings to our attention, and the RGH Trust does not dispute, that the electronically accessible public records of the Reliance bankruptcy case show that RGH's voluntary petition estimated the number of beneficial holders of its notes "to be in excess of 500 holders." The bankruptcy record also includes the certification of the tabulation of votes on the reorganization plan, which states that 454 senior bondholders and 364 subordinated bondholders voted in favor of the plan. While it would have been preferable for Deloitte to place these bankruptcy court filings in the record on its motion to dismiss (and we hasten to add that we would reach the same result even if we were not aware of this material), it is well established that a court "may take judicial notice of undisputed court records and files" (*Matter of Khatibi v Weill*, 8 AD3d 485 [2004]). This principle extends to the uncontroverted public records of bankruptcy proceedings (*see MJD Constr. v Woodstock Lawn & Home Maintenance*, 293 AD2d 516, 517 [2002], *lv denied* 100 NY2d 502 [2003]; *Marcinak v General Motors Corp.*, 285 AD2d 387 [2001]; *Two Guys From Harrison-NY v S.F.R. Realty Assoc.*, 186 AD2d 189 [1992]); *cf. Property Clerk, N.Y. City Police Dept. v Se-*

complaint implies that these bondholders can be identified through the "Depository Trust Company clearing house system," which, the RGH Trust represents, will be used to distribute to the bondholders any damages ultimately recovered for them in this action.

**7.** Apparently realizing that offering to reduce the number of bondholders to 50 necessarily implied that the action was brought on behalf of more than 50 bondholders, the RGH Trust has not repeated that offer on appeal.

*roda*, 131 AD2d 289, 294 n 2 [1987] [taking judicial notice of letter in the record of a federal court action]; *Matter of Hartman v Joy*, 47 AD2d 624, 625 [1975] [taking judicial notice of pendency of Civil Court action]; *George v Time, Inc.*, 259 App Div 324, 328 [1940], *affd* 287 NY 742 [1942] [taking judicial notice of decree entered in a federal court action]).[8]

In view of the foregoing, there is no question that the RGH Trust is asserting the claims of more than 50 bondholders in this action. Indeed, the RGH Trust, rather than seeking to justify or excuse its failure to estimate the number of bondholders it represents, argues instead that the number of bondholders is irrelevant for either of two reasons. The RGH Trust's first argument in this regard is that the bondholder claims should be deemed to have been brought on behalf of the two indenture trustees for the two categories of bonds (senior and subordinated), not the bondholders themselves. Secondly, the RGH Trust argues that, under one of SLUSA's provisions, it is entitled to be counted as one person for purposes of determining this action's compliance with the statute. We reject both of these arguments.

The argument that this action is being prosecuted on behalf of the two indenture trustees (which the RGH Trust inappropriately raises for the first time on appeal) is belied by the amended complaint itself. The first paragraph of the amended complaint avers that the action is brought by the "RGH Liquidating Trust, on behalf of the general unsecured creditors of [RGH] and the general unsecured creditors of [RFS]," and the prayer for relief demands "judgment in favor of the general unsecured creditors of RGH and RFS." Similarly, a lengthy section of the pleading, entitled "The Creditors of RGH and RFS," identifies by subheading the four groups of creditors whose claims are asserted in this action; the "Bondholders" (but not the indenture trustees) are one of these groups. The amended

---

**8.** We recognize, of course, that judicial notice should not be taken of a controverted matter of fact simply because a document alleging that "fact" has been filed with a court (*see Walker v City of New York*, 46 AD3d 278, 282 [2007]; *Weinberg v Hillbrae Bldrs.*, 58 AD2d 546 [1977]). The RGH Trust does not, however, affirmatively take a position one way or the other on the relevant factual issue, i.e., whether the number of bondholders does or does not exceed fifty. Instead, as previously discussed, this sophisticated litigant disingenuously asserts that the matter cannot be determined from the present record, while not denying that it already knows the answer. Thus, taking notice that the Reliance bankruptcy record shows that there are more than 50 bondholders does not offend the rule against "tak[ing] judicial notice of a 'fact' which [i]s controverted" (*Weinberg v Hillbrae Bldrs., supra*).

complaint further alleges that "[t]he largest group of creditors whose claims have been assigned to the RGH Liquidating Trust to administer are *individuals and entities that purchased RGH bonds*" (emphasis added). While the amended complaint alleges that the indenture trustees relied on Deloitte's statements in determining whether to declare the bonds in default, there is no allegation that the indenture trustees, as such, suffered any injury or that any recovery is sought for them.[9] To the contrary, the amended complaint alleges that the bondholders were the parties injured by the alleged misconduct and that "[a]ny money recovered by the [RGH] Trust on the bondholders' claims *will be distributed to the bondholders* on a pro rata basis pursuant to the bankruptcy plan of reorganization" (emphasis added).

To recapitulate, SLUSA defines a "covered class action" as a single lawsuit in which "damages are sought on behalf of more than 50 persons or prospective class members" as to whose claims "common" questions of law or fact predominate (15 USC § 78bb [f] [5] [B] [i] [I]). Hence, given that the amended complaint neither alleges any injury to the indenture trustees nor seeks any damages on their behalf, the number of indenture trustees does not enter into the SLUSA analysis. What does matter under SLUSA is whether the number of Reliance bondholders—the allegedly injured parties for whom damages are sought—exceeds 50, and, as previously discussed, it does.

The RGH Trust's second argument on the SLUSA issue—that the RGH Trust should be counted as one person, regardless of the number of bondholders for whom it seeks damages—relies on the following provision of the Act, captioned "Counting of certain class members":

> "For purposes of this paragraph [which includes the definition of the term 'covered class action'], a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action" (15 USC § 78bb [f] [5] [D]).

The RGH Trust takes the position that it is entitled to be treated as a single person under the above-quoted provision on the ground that it was not established *solely* or even (as the

---

**9.** The amended complaint does not indicate whether either institution that served as an indenture trustee held Reliance bonds for its own account and, if it did, whether its claims as an individual bondholder were among those assigned to the RGH Trust.

RGH Trust would have it) *primarily* "for the purpose of participating in th[is] action." In this regard, the RGH Trust contends that the primary purpose for which it was established was the liquidation of the assets of the Reliance bankruptcy estate and the distribution of the proceeds of that liquidation to the creditors of the estate.[10] This argument is also unavailing.

The flaw in the RGH Trust's contention that it is entitled to be counted as a single person under SLUSA is that the Act excludes from single-person treatment any entity "established for the purpose of participating in the action," not only entities whose sole or primary purpose is to participate in the action. Specifically, the statute states that an entity "shall be treated as one person . . . only if the entity is not established for the purpose of participating in the action" (15 USC § 78bb [f] [5] [D]). The word "purpose" is not modified in any way. Hence, if an entity was established for the purpose of participating in the subject action, it is irrelevant that the entity also has other purposes, or that participation in the action is not the entity's primary purpose.

The record in this case makes plain that the RGH Trust was, in fact, "established for the purpose of participating in th[is] action," among others. The amended complaint itself alleges that "the RGH Liquidating Trust has been established to pursue the claims of RFS, RGH *and their respective creditors*" (emphasis added). This allegation is borne out by the reorganization plan. Section 10.6 of the reorganization plan provides that, upon the plan's effective date,

> "all Causes of Action held by the Debtor, the Estate or either Committee [of unsecured creditors] . . . , *including . . . Creditor Litigation Claims* (other than those held by Opt-Out Claimants), shall be deemed assigned to the Liquidating Trust [i.e., plaintiff] and become Trust Property, to be man-

---

**10.** The bondholders' claims against Deloitte, although assigned to the RGH Trust under the reorganization plan, were not part of the Reliance bankruptcy estate. Again, the claims asserted in the amended complaint, including those of the bondholders, were among the "Creditor Litigation Claims" assigned to the RGH Trust pursuant to the reorganization plan approved in the Reliance bankruptcy case. Under the reorganization plan, the RGH Trust acquired the right to litigate the "Creditor Litigation Claims," which were defined to include any claim of any member of certain impaired classes of creditors (except for claims retained by creditors who opted out and certain other exceptions not relevant here) that arose "from or in connection with [the creditor's] claims against [RFS] or [RGH]."

aged by the Liquidating Trust. *Upon such assignment, the Liquidating Trust shall obtain all rights to litigate such Causes of Action"* (emphasis added).[11]

To like effect, section 6.6 of the reorganization plan provides that, upon the plan's effective date, the RGH Trust

"shall have the authority, to the extent set forth in the Liquidating Trust Agreement, to . . . examine all rights of action, including, without limitation, . . . Causes of Action that constitute Trust Property [including Creditor Litigation Claims] and *to file, litigate to final judgment, settle or withdraw such rights of action"* (emphasis added).

Moreover, it is of no moment that the reorganization plan does not refer specifically to the claims asserted in this action (i.e., the claims of Reliance's unsecured creditors against Deloitte), since those claims are plainly within the scope of the litigation the RGH Trust was created to conduct (*see Cape Ann Invs. LLC v Lepone*, 296 F Supp 2d 4, 10 [D Mass 2003] [in holding that a trust created for the purpose of litigating claims contributed to it was not "one person" within the meaning of SLUSA, the court observed that "(t)he Trustee's argument that the Trust is a unitary entity because it was created not to pursue any particular action, but all 'such actions as necessary to recover on behalf of beneficiaries,' makes no sense conceptually or legally"]).

The decision on which the RGH Trust primarily relies in arguing that it is entitled to single-person treatment under SLUSA is not to the contrary. While the Ninth Circuit stated in *Smith v Arthur Andersen LLP* (421 F3d 989 [9th Cir 2005]) that it construed the relevant statutory language ("established for the purpose of participating in the action") to mean that an entity's " 'primary purpose' is to pursue causes of action" (*id.* at 1007), that statement constituted dicta unnecessary to decide the case. This is because the *Smith* plaintiff was a bankruptcy trustee suing on the claims of the estate of the corporate debtor (Boston Chicken), not on behalf of a group of creditors (*see id.* at 1003 ["the Trustee is not attempting to assert claims that were assigned to him by Boston Chicken's creditors, but rather seeks to rectify injuries to Boston Chicken itself"]). Thus, whether liti-

---

**11.** Again, the claims against Deloitte asserted in the amended complaint, including those of the bondholders, are included in the reorganization plan's definition of the term "Creditor Litigation Claims."

gation was the primary purpose of the Boston Chicken trustee or only one of a number of purposes, the action would not have implicated SLUSA, since the claims asserted were originally held by only one injured person, namely, Boston Chicken (*see LaSala v Bordier et Cie*, 519 F3d 121, 134 [3d Cir 2008], *cert dismissed* 555 US —, 129 S Ct 593 [2008] [the phrase "on behalf of 50 or more persons" in 15 USC § 78bb (f) (5) (B) (i) "refers to the assignors of a claim, not to the assignee (or, if the assignee is a trust, to its beneficiaries)"]).[12]

In *LaSala*, SLUSA was held not to be implicated in an action brought by the liquidating trust for the estate of a bankrupt corporation (AremisSoft), the beneficiaries of which were the purchasers of AremisSoft stock (the Purchasers). As the *LaSala* court explained, "the Trust is not bringing its claims 'on behalf of' the Purchasers, as SLUSA uses the term, because the Purchasers are not the injured parties; rather, the Trust is bringing the claims 'on behalf of' AremisSoft" (519 F3d at 134), the defunct corporation, which had assigned the claims in question to the trust for the benefit of the Purchasers. In this case, by contrast, the claims of Reliance, the bankrupt debtor, have all been dismissed, and the only claims asserted in the amended complaint originally belonged to Reliance's numerous unsecured creditors, including the bondholders. This being the case, insofar as there are more than 50 bondholders, the maintenance of their claims against Deloitte in a single action offends SLUSA, which was

> "designed to prevent securities-claims owners from bringing what are, in effect, class actions by assigning claims to a single entity. Put simply, Congress's goal was to prevent a class of securities plaintiffs from running their claims through a single entity

---

**12.** The Third Circuit concluded in *LaSala* that the statutory phrase "on behalf of 50 or more persons" refers to "assignors of a claim, not to the assignee" (519 F3d at 134) based on the following reasoning:

> "Prong two of § 78bb (f) (5) (B) (i) ['questions of law or fact common to those persons or members of the prospective class . . . predominate over any questions affecting only individual persons or members'] . . . seems to use the terms 'persons' and 'members of the prospective class' to refer to the original owners of the claim—those injured by the complained-of conduct, as those are the persons who might have common questions of law or fact related to the claim that predominate over individual questions of law or fact. Reading prong one in light of prong two, the phrase 'on behalf of 50 or more persons' seems to refer to someone bringing a claim on behalf of 50 or more *injured* persons" (*id.*).

[what the bondholders are doing here], not to prevent a single bankruptcy estate from assigning its claims to an entity capable of acting to protect the common interests of a class of people [what occurred in *Smith* and *LaSala*]" (*id.* at 136 [citation omitted]).

A scenario similar to the one here was presented in *Cape Ann Invs. LLC v Lepone* (*supra*), a decision that the RGH Trust mistakenly views as supporting its position. The *Cape Ann* action was prosecuted by a litigation trust created in the bankruptcy proceedings for NutraMax (296 F Supp 2d at 8). In addition to the claims of NutraMax itself, the trust asserted state-law claims against NutraMax's auditor that had been assigned to the trust by NutraMax shareholders (the Electing Shareholders). The court held that, since the trust's purpose was the prosecution of the claims contributed to it (*id.* at 10), and all other elements of SLUSA were satisfied, the action was barred to the extent it asserted the claims of the Electing Shareholders (*id.* at 12).[13] In reaching this conclusion, the court noted that the trustee's "role [in suing on the Electing Shareholders' claims] is no different than that of any shareholder class representative" (*id.* at 10). The same is true of the RGH Trust in this case.

Contrary to the RGH Trust's contention, its position is not supported by SLUSA's legislative history. The report of the Senate Committee on Banking, Housing and Urban Affairs states that SLUSA's definition of a "covered class action" was drafted

"to ensure that the legislation does not cover instances in which a person or entity is duly authorized by law, other than a provision of state or federal law governing class action procedures, to seek damages on behalf of another person or entity. Thus, a trustee in bankruptcy, a guardian, a receiver, and other persons or entities duly authorized by law (other than by a provision of state or federal law governing class action procedures) to seek damages

---

**13.** The *Cape Ann* decision states, as a matter of fact, that the trust agreement in that case "describe[d] the primary purpose of the Trust as 'prosecuting the Causes of Action contributed to it . . . and distributing to the Class 6 Beneficiaries [the Electing Shareholders] the assets of the Trust remaining after payment of all claims against or assumed by the Trust'" (296 F Supp 2d at 10). Nowhere in the *Cape Ann* decision, however, is there any indication that it was crucial to the result in that case that the trust's litigation functions were its "primary" purpose.

on behalf of another person or entity would not be covered by this provision" (S Rep 105-182, 105th Cong, 2d Sess, at 8, available at 1998 WL 226714).

As the Third Circuit explained in *LaSala*, the above-quoted discussion demonstrates "Congress's clear intent not to reach claims asserted by a bankruptcy trustee *on behalf of a bankruptcy estate*" (519 F3d at 135 [emphasis added]). Again, in this action, the bondholders' claims against Deloitte are not being asserted on behalf of the Reliance bankruptcy estate; the claims originally belonged to the bondholders, not Reliance.

Moreover, the Senate report manifests Congress's intent that SLUSA not affect the power of an agent to bring suit on behalf of another person or entity where the power to bring such a suit is a necessary incident of an agency created by law to deal with the property of the other person or entity. Thus, as elucidated by *LaSala*, Congress did not intend that SLUSA would limit a bankruptcy trustee's power to sue on causes of action belonging to the bankruptcy estate.[14] This principle does not avail the RGH Trust with respect to the bondholders' claims, however, because the power to sue on those claims is not a necessary incident of the liquidation of the assets of the Reliance bankruptcy estate, the primary purpose for which the RGH Trust was created. After all, the bondholders' claims did not originally belong to Reliance, and, under the reorganization plan, each bondholder was free to retain its own claims by opting out of the provision for assignment of Creditor Litigation Claims to the RGH Trust. Thus, the assignment of the claims at issue to the RGH Trust was simply a voluntary assignment of causes of action, rather than a necessary incident of the RGH Trust's core task of liquidating Reliance's assets.[15] A group (like

---

**14.** Similarly, a guardian's assertion of claims belonging to the person under the protection of the guardianship is a necessary incident of the guardian's power to manage that person's property. By the same token, a receiver's assertion of claims belonging to the entity in receivership is a necessary incident of the power to manage or dispose of that entity's property.

**15.** By contrast, in *Lee v Marsh & McLennan Cos., Inc.* (2007 WL 704033, 2007 US Dist LEXIS 16489 [SD NY, Mar. 7, 2007]), a case relied on by the RGH Trust, the plaintiff family trusts were held to be entitled to be counted as single persons under SLUSA, without regard to the number of beneficiaries, because the trusts were established for the purpose of managing family property; prosecuting actions relating to the property under the trusts' management was a necessary incident to the management of that property (2007 WL 704033, *4-5, 2007 US Dist LEXIS 16489, *14-18). Similarly distinguishable is *State ex rel. Oregon 529 Coll. Sav. Bd. v OppenheimerFunds, Inc.* (2009 WL 2517086, 2009 US Dist LEXIS 72739 [D Or, Aug. 14, 2009]), in

issued by a bankrupt entity should not be permitted to defeat SLUSA through the expedient of voluntarily assigning their claims for alleged securities fraud to the bankruptcy trustee of the issuer's estate. The role of such a trustee in bringing suit on claims that did not originally belong to the bankrupt issuer "is no different than that of any shareholder class representative" (*Cape Ann Invs. LLC v Lepone*, 296 F Supp 2d at 10). To paraphrase a well-worn expression, a class representative by any other name would offend SLUSA as much.

For the foregoing reasons, we hold that SLUSA bars the assertion of the bondholders' claims in this single lawsuit. Accordingly, we need not discuss any of the remaining arguments raised with regard to the bondholders' claims.

II. Other Categories of Creditors

On this motion addressed to the sufficiency of the RGH Trust's pleading, Supreme Court correctly declined to dismiss the claims asserted on behalf of the three categories of creditors other than the bondholders. Given that we are required to assume the truth of the amended complaint's allegations, and to draw all inferences in the pleader's favor, we conclude that the RGH Trust has sufficiently alleged that Reliance's 15 bank lenders, two identified former Reliance employees (David C. Woodward and Christine Howard), and the PBGC relied to their detriment on Deloitte's statements regarding Reliance's financial condition in the 1999 10-K and suffered losses as a result. To the extent it is alleged that the creditors' reliance on Deloitte's alleged misstatements took the form of forbearance from taking protective action, such alleged forbearance satisfies the reliance element of a fraud cause of action (*see Foothill Capital Corp. v Grant Thornton, L.L.P.*, 276 AD2d 437, 438 [2000]). Whether the creditors' alleged reliance was reasonable in light of all of the information that was available to them, and whether such reliance, if reasonable, resulted in compensable losses, are questions of fact not susceptible to resolution on a motion to dismiss (*id.*).

With regard to the employee claimants, as previously noted, the amended complaint identifies only two such former Reliance the Reliance bondholders) of more than 50 holders of securities

which the court denied a SLUSA-based motion to dismiss securities-related state-law claims asserted by the board of Oregon's College Savings Plan Trust against its financial adviser. Because the Oregon board's prosecution of litigation relating to the trust's assets was a necessary incident of its duty to manage those assets, the board was appropriately treated as a single person under SLUSA, regardless of the number of plan participants.

employees by name, although reference is made to a larger class of allegedly injured employees. Since Supreme Court granted Deloitte's motion to dismiss with respect to the claims "assert[ed] on behalf of unidentified creditors" (other than unidentified bondholders) (17 Misc 3d 1128[A], 2007 NY Slip Op 52181[U], *9), and the RGH Trust has not appealed that determination, the only employee claims that remain pending and are being sustained on this appeal are those of the two employees identified by name in the amended complaint.[16]

Deloitte argues that SLUSA bars the employee claims to the extent the "pension and employee benefits" the employees failed to cash out consisted of securities traded on a national exchange. As Deloitte acknowledges, however, the extent to which these "pension and employee benefits" consisted of securities cannot be determined from the amended complaint or anything else in the present record. In view of the uncertainty as to whether the employees' claims relate to the purchase or sale of securities, and given that the claims of only two employees remain pending, dismissal of the employee claims based on SLUSA is not warranted at this juncture.[17]

We have considered Deloitte's remaining arguments, including the claims that scienter and loss causation have not been sufficiently alleged and that the amended complaint is barred by this Court's decision on the prior appeal, and find them unavailing.

## Conclusion

For the foregoing reasons, we modify the order appealed from to grant the motion to dismiss the amended complaint insofar as it asserts claims on behalf of holders of bonds issued by Reliance, and otherwise affirm the denial of the motion.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about November 13, 2007, which, insofar as appealed from, denied defendants' motion to dismiss the amended complaint with respect to claims

**16.** To the extent the RGH Trust argues that Supreme Court did not dismiss the claims asserted on behalf of unidentified employees, that argument is contradicted by Supreme Court's decision, which plainly states that the only employee claims being sustained were those of the *"two* former employees of RGH and RFS" identified by name in the amended complaint (17 Misc 3d 1128[A], 2007 NY Slip Op 52181[U], *7 [emphasis added]).

**17.** Deloitte has not argued that the claims of the bank lenders and of PBGC should be dismissed pursuant to SLUSA at this point in the proceedings.

asserted on behalf of identified creditors and groups of creditors of Reliance, should be modified, on the law, to grant the motion to the extent of dismissing the claims asserted on behalf of holders of bonds issued by Reliance, and otherwise affirmed, without costs.

MAZZARELLI, J.P., SAXE, ACOSTA and DEGRASSE, JJ., concur.

Order, Supreme Court, New York County, entered on or about November 13, 2007, modified, on the law, to grant the motion to the extent of dismissing the claims asserted on behalf of holders of bonds issued by Reliance, and otherwise affirmed, without costs.